### PETER v. WESTERN NEWSPAPER UNION et al.

No. 14023.

United States Court of Appeals, Fifth Circuit.

Jan. 5, 1953.

William A. Gillen, Tampa, Fla., for appellant.

Fred H. Kent and Clarence G. Ashby, Jacksonville, Fla., for appellee.

Before BORAH, STRUM, and RIVES, Circuit Judges.

RIVES, Circuit Judge.

A complaint seeking to recover treble damages for alleged violations of certain Anti-Trust Laws of the United States was dismissed on motion and this appeal ensued. The reasons for the dismissal were well stated by the District Court in its judgment as follows:

"Ordered and Adjudged that defendants' motion to dismiss this action (filed August 30, 1951) is granted upon the ground that the complaint fails to show a right in plaintiff to maintain the action, in that he is not shown to have been injured in his business or property within the meaning of 15 U.S.C.A. § 15, as construed by the United States Courts. Plaintiff formerly was a stockholder in a corporation alleged to have been injured by defendants' violation of the Anti-Trust Laws of the United States, 15 U.S.C.A. Secs. 1, 2, 3, 4, 13, 13a, 15, 18 and 22. Under the decided cases, the damage suffered by plaintiff as a stockholder was incidental and gives rise to no cause of action under Section 15. He may be entitled to maintain some other form of action against defendants, but not the statu-

tory one brought. This defect is jurisdictional and the defendants are entitled to a final order of dismissal (Peterson v. Borden Co., 7 Cir., 50 F.2d 644; Blumenstock Bros. Adv. Agency v. Curtis Publishing Co., 252 U.S. 436, 440, 40 S.Ct. 385, 64 L.Ed. 649, 652; Annotation 139 A.L.R. 1013, 1017)."

The District Court did not reach the question of whether the allegations of the plaintiff's complaint were sufficient to charge the defendants with violations of the Anti-Trust Laws of the United States, because it held that in no event could the individual plaintiff maintain the action. To review that decision, however, it is necessary to keep in mind the averments of the complaint.

The defendant, Western Newspaper Union is engaged in the newspaper supply business including the sale and shipment in interstate commerce of paper of the type upon which newspapers are printed, commonly known as newsprint, the sale and shipment in interstate commerce of certain preprinted news and comic features upon some of the newsprint sold by it, and the sale and shipment in interstate commerce of completely printed tabloid service and feature services.

The defendant, The News-Journal Company, is engaged in publishing and selling newspapers in various cities of the State of Florida and in soliciting and fulfilling contracts for commercial printing.

The defendant, John H. Perry, is a director and stockholder of the two defendant corporations and has long been engaged in the business of publishing newspapers and in the newspaper and printers' supply businesses. He is the owner and publisher of a large chain of newspapers and other publications in the State of Florida and other states, including some twenty-four named newspapers in the State of Florida.

The defendant, John H. Perry, Jr., is the son of the defendant, John H. Perry, and is Vice-President or other executive officer, a director in and a stockholder of the two defendant corporations and is associated with his father in the various named enterprises. The defendant, E. D. Shirey, is the resident manager of the defendant, Western Newspaper Union.

About 1946 The News-Journal Company purchased two newspapers in the City of Leesburg, Florida, known as The Leesburg Commercial and The Leesburg Ledger, and consolidated those newspapers into one published under the name of The Leesburg Commercial Ledger. About 1947 The News-Journal Company purchased a newspaper in Tavares, Florida, and thereafter published the same under the name of Eustis Lake Region News.

In May 1947 the plaintiff together with two other individuals purchased a newspaper in Tavares, Florida, known as The Lake County Citizen and subsequently organized a corporation known as The Lake County Citizen, Incorporated, to which the assets of said newspaper were transferred. The capital stock of the corporation was divided equally among the plaintiff and his two associates. The plaintiff became editor of The Lake County Citizen. That newspaper was published first as a weekly newspaper and then twice each week and was distributed in Lake County, Florida, particularly in and around the cities of Tavares, Eustis, Mount Dora and Astatula, Florida.

Newsprint was in great demand by publishers of newspapers and the supply thereof was extremely scarce. The Western Newspaper Union processed, sold and distributed in interstate commerce approximately 90% of all newsprint partly preprinted with news features and advertising, processed, sold and distributed throughout the United States. The Lake County Citizen, Incorporated, purchased and received from the Western Newspaper Union a large part of the newsprint upon which it published The Lake County Citizen.

In and prior to June, 1948 The Lake County Citizen, Incorporated, made plans and arrangements for the publication of a newspaper to be known as The Leesburg Leader and to be sold and distributed in and around Leesburg, Florida. Said newspaper was to be published on Tuesday and Friday of each week, the first issue to be Friday, June 11, 1948. The Leesburg Leader was in competition with The Leesburg Com-

mercial Ledger and Eustis Lake Region News, both of which latter newspapers were published by the defendant, The News-Journal Company.

The defendants contracted, combined or conspired in restraint of trade or commerce or to monopolize all or a part of the trade or commerce among the several states by eliminating the publishing and sale in interstate commerce by The Lake County Citizen, Incorporated, of The Leesburg Leader as a competitor of The News-Journal Company, and also by eliminating The Lake County Citizen, Incorporated, as a competitor of The News-Journal Company in soliciting and fulfilling contracts for commercial printing.

The Lake County Citizen, Incorporated, made arrangements to purchase from the Miami Herald the newsprint for use in publishing each week the Friday edition of The Leesburg Leader. It placed a standing and continuing order with Western Newspaper Union for 1400 sheets of partially preprinted newsprint to be supplied each week, which order was accepted by Western Newspaper Union. The first edition of The Leesburg Leader on Friday, June 11, 1948, was published on newsprint purchased from the Miami Herald; the second edition on Tuesday, June 15, 1948, on newsprint including the preprinted service which had been sold and shipped to The Lake County Citizen, Incorporated, by Western Newspaper Union. Immediately after that publication, on June 15, 1948, the defendant, Western Newspaper Union, through its resident manager, E. D. Shirey, notified The Lake County Citizen, Incorporated, that the printed service which Western Newspaper Union had been selling to The Lake County Citizen, Incorporated, was for use only in Tavares, Florida, and not in Leesburg, Florida, and instructed that company not to use the printed service further in the publication of The Leesburg Leader, that The Leesburg Commercial Ledger had the complete selection of the features of Western Newspaper Union for use in Leesburg and that a preprinted service could not be furnished to The Lake County Citizen, Incorporated, for use in

Leesburg, and further, that if The Lake County Citizen, Incorporated, used any of the newsprint for the publication of The Leesburg Leader, Western Newspaper Union would not sell it any newsprint or preprinted service of any kind even for use in The Lake County Citizen, sold and distributed in Tavares, Florida. The plaintiff claims that the defendants used the short supply of newsprint as an economic weapon against competitors.

The Lake County Citizen, Incorporated, did not have any agreement or contract with Western Newspaper Union restricting the use of the newsprint and preprinted service which it purchased for the newspaper published in Tavares, Florida. The printed features sold by Western Newspaper Union were numerous and varied and it was easily possible to make available nonduplicating printed service features for use in The Leesburg Leader and for use in The Leesburg Commercial Ledger. The complaint avers on information that The News-Journal Company as publisher of The Leesburg Commercial Ledger did not have any contract giving that company complete selection of the printed features of Western Newspaper Union to the exclusion of the use of a nonduplicating service by The Leesburg Leader.

From and after June 15, 1948, in furtherance of the combination and conspiracy, the Western Newspaper Union refused to sell to The Lake County Citizen, Incorporated, for use in The Leesburg Leader any newsprint or newsprint with printed service. It was then necessary for the plaintiff and his associates to discontinue their promotional efforts on the behalf of The Leesburg Leader and to make various efforts to locate sources of newsprint upon which to print the Tuesday issue of The Leesburg Leader. They were unable to find an adequate source of supply of the newsprint and there was no other source available to them of preprinted news features or newsprint.

In further pursuance of the combination and conspiracy on or about August 20, 1948, the defendant Western Newspaper Union refused to sell and deliver to The Lake

County Citizen, Incorporated, a service described as a completely printed tabloid for The Leesburg Leader.

In further pursuance of the conspiracy to restrain trade or to create a monopoly and in order to eliminate The Leesburg Leader as a competitor, The News-Journal Company cut prevailing printing prices. Several specific instances are alleged. As a result in the month of December, 1948 there was at least a $1,000.00 decrease in the volume of commercial printing business of The Lake County Citizen, Incorporated. The latter's presses were idle while the presses of The News-Journal Company were busy producing low cost printing at a loss of thousands of dollars to The News-Journal Company in an attempt to eliminate The Lake County Citizen, Incorporated, as a competitor.

The Lake County Citizen, Incorporated, attempted to remain in business. It had to cut the number of its employees because of its inability to pay salaries. The plaintiff and his two associates worked 10 to 12 hours per day, seven days per week in soliciting subscriptions and advertising and in handling the detailed work of setting the type in turning out the two newspapers. By June 15, 1949, the tactics of the defendants had reduced the business and income of The Lake County Citizen, Incorporated, to such a degree that it could no longer compete with The News-Journal Company. The complaint alleges that "as a further proximate result of the aforesaid contract, combination or conspiracy of the defendants, it became necessary for the plaintiff and the other two stockholders of The Lake County Citizen, Incorporated, to sell their shares of capital stock in said corporation to The News-Journal Company." Such sale was for a total sum of $6,000, of which the plaintiff received ⅓ or the sum of $2,000. The plaintiff alleges that the reasonable value of his stock under normal circumstances would have been many times greater than said sum. The News-Journal Company declined to purchase any of the machinery and most of the office equipment of The Lake County Citizen, Incorporated, and each of the three stockholders was able to realize from the sale of such machinery and equipment the sum of $1,425.

The complaint sets forth in paragraph 34 four classes of actual damages as follows:

"(a) He suffered the loss of the sum of $2333.33, the same being one-third of the amount of profits in the sum of $7,000, which The Lake County Citizen, Incorporated, as publisher of The Leesburg Leader would reasonably have made from advertising.

"(b) He has suffered the loss of the sum of $1666.67, the same being one-third of the amount of profits in the sum of $5,000, which The Lake County Citizen, Incorporated would reasonably have made from commercial printing.

"(c) He has suffered the loss of the sum of $1,166.67, the same being one-third of the amount of profits in the sum of $3500 which The Lake County Citizen, Incorporated, as publisher of The Leesburg Leader, would reasonably have made in connection with increased circulation of said newspaper.

"(d) He suffered the loss of the sum of $6,637.67 in connection with the sale of one-third of the total shares of capital stock of The Lake County Citizen, Incorporated to The News-Journal Company. The reasonable value of the plaintiff's stock would have been one-third of the sum of $29,000, to wit, $9666.67, which was the reasonable value of the corporation, less the sum of $3,029, which the plaintiff actually received from The News-Journal Company and from the sale of certain machinery and equipment belonging to The Lake County Citizen, Incorporated."

Title 15 U.S.C.A. § 15 provides as follows:

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy,

872

and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

■■■ As indicated by the District Judge, it is well settled that a stockholder in a corporation as such is not injured in his business or property within the meaning of that provision merely because the unlawful combination or conspiracy has caused injury to the business or property of the corporation as a result of which the value of its stock has been reduced. Cases cited in the District Court's opinion, quoted supra, Coast v. Hunt Oil Co., 5 Cir., 195 F.2d 870, and cases there cited. Cases collected in Annotation 139 A.L.R. 1018, 1019. The courts have held that the statute was intended to follow the settled policy of the law as to when redress must be sought by the corporation and when an individual wrong is done to the stockholder. Loeb v. Eastman Kodak Co., 3 Cir., 183 F. 704, 709. It seems clear to us that the first three classes of damages sought to be recovered by the plaintiff and listed under sub-paragraphs (a), (b), (c) of paragraph 34 of the complaint, quoted supra, are derivative from the corporation and could be recovered only by the corporation itself. We do not think that the fact that the capital stock of the corporation has been acquired by the defendant, The News-Journal Company, in violation of Section 18 of Title 15 U.S.C.A. would alter this principle, for there is no causal connection between such acquisition and the previous damage to the purchased corporation. Peterson v. Borden Co., 7 Cir., 50 F.2d 644.

■■■ A more difficult question is presented as to the plaintiff's right to recover the fourth class of damages, that claimed under subparagraph (d) of paragraph 34 of the complaint, namely the loss at which plaintiff was caused to sell his shares of stock. Under the general policy of the Law applying in anti-trust cases, Loeb v. Eastman Kodak Co., supra, a stockholder may maintain an action in his own right for an injury directly affecting him resulting from the violation of a duty owed the stockholder by the wrongdoer.[1] The language of the Anti-Trust Laws is broad enough to protect "Any person who shall be injured in his business or property * * *", 15 U.S.C.A. § 15. It would be no defense that the plaintiff was himself a party to the violation of 15 U.S.C.A. § 18 in selling his stock to the defendant News-Journal Company, for the plaintiff acting under economic duress, public policy would demand court intervention in his behalf even if technically he could be considered in pari delicto. Ring v. Spina, 2 Cir., 148 F.2d 647, 653, 160 A.L.R. 371. A wrong causing a stockholder to part with his shares for less than their real value has been held to be a direct injury to the individual stockholder. Coronado Development Corporation v. Millikin, supra, and cases there cited. The injury to the stockholder, however, must be direct and not merely consequential or derivative through the corporation. (See authorities cited in footnote 1, supra.) In the present case under the averments of the complaint, prior to the sale of the stock, its depreciation in value had already been suffered from injuries directly affecting the corporation rather than the stockholder. The sale of the shares of stock resulted in no further loss to the stockholder but substituted for the already depreciated value of the stock money supposedly of equal value. See Peterson v. Borden Co., supra.

1. Ritchie v. McMullen, 6 Cir., 79 F. 522, 533 (Opinion by Taft, Circuit Judge); General Rubber Co. v. Benedict, 215 N. Y. 18, 21, 109 N.E. 96, L.R.A.1915F, 617 (Opinion by Cardozo, J.); Adams v. Clark, 239 N.Y. 403, 146 N.E. 642 (Opinion by Pound, J.); Niles v. N. Y. C. & H. R. R. Co., 176 N.Y. 119, 123, 124, 68 N. E. 142; Green v. Victor Talking Machine Co., 2 Cir., 24 F.2d 378, 381, 59 A.L.R. 1091; Sutter v. General Petroleum Corp., 28 Cal.2d 525, 170 P.2d 898, 167 A.L.R. 271, 276; Coronado Development Corporation v. Millikin, 175 Misc. 1, 22 N.Y.S.2d 670, 674. 675; Id., 262 App.Div. 504, 30 N.Y.S.2d 548; 18 C.J.S., Corporations, § 559, p. 1275; Smith v. Hurd, 12 Metc., Mass., 371, 46 Am.Dec. 690.

It is true that the sale of the plaintiff's stock and of that held by the other two stockholders to the defendant News-Journal Company effectively deprived the stockholders of a remedy through corporate action for any wrong. The power to influence corporate action was one of the incidents of the ownership of the stock to be taken into consideration in arriving at its sales price. If on account of duress, coercion or any other ground the plaintiff had a right to avoid the sale of this stock and to force a suit by the corporation or to bring a secondary action as a shareholder, Rule 23(b), Federal Rules of Civil Procedure, 28 U.S.C.A., that course has not been pursued. The plaintiff has rather sought to recover for damages allegedly suffered by him individually. Such damages, we think, are indirect, consequential or derivative from the corporation, and cannot be so recovered by the plaintiff as an individual. The judgment is therefore affirmed.

Affirmed.