Raymond E. BOOKOUT, as Administrator, Appellant,

v.

SCHINE CHAIN THEATRES, Inc., et al., Appellees.

No. 183, Docket 23192.

United States Court of Appeals Second Circuit.

Argued Feb. 11, 1958.

Decided March 11, 1958.

Russell Hardy, Washington, D. C., Warner F. Thompson, Lockport, N. Y. (Russell Hardy, Sr., Russell Hardy, Jr., John F. Clagett, Washington, D. C., of counsel), for appellant.

Raichle, Tucker & Moore, Frank G. Raichle, Buffalo, N. Y. (James O. Moore, Jr., Albany, N. Y., of counsel), for appellees.

Before HAND, HINCKS and LUMBARD, Circuit Judges.

HAND, Circuit Judge.

■ Upon this appeal, coming as it does from a summary judgment dismissing the complaint, the plaintiff is concededly entitled to have all disputed issues resolved in his favor. On that assumption the substance of the facts is as follows. The plaintiff is the administrator c.t.a. of one, Dickinson, who had owned "a controlling interest" in Lock City Theatres, Inc., which held title to a parcel of land in Lockport, New York, on which stood a moving picture theatre. This parcel Dickinson leased to the "Palace Theatre" until December, 1932, when he evicted it for failure to pay rent. Thereupon he organized another corporation—Reliance Theatres, Inc.—to which he let the building for ten years: i. e., from January 1, 1933, to December 31, 1942, he himself holding one-third of the shares and one, Dipson, the other two-thirds. Reliance Theatres, Inc., used the theatre until October, 1936, when it was forced to close owing to an

294

unlawful conspiracy under the Anti-Trust Acts of Schine Chain Theatres, Inc., and the individual defendants, by means of which they had cut off its supply of films. Dickinson had died in December, 1933, and his shares in Reliance Theatres, Inc., passed to his executors, of whom the plaintiff is the successor.

In May, 1935, after it became apparent that the business could not prosper Dickinson's executors tried to induce the defendants to buy the shares but they would not offer a satisfactory price. Thereupon in April, 1936, they got leave from the Surrogate of Niagara County to sell at public auction various interests of Dickinson in Lock City Theatres, Inc., together with the shares held by him in Reliance Theatres, Inc. The property was sold on April 21, 1936, and the only bidders at the sale were Schine, one of the defendants, and one, Osborne, who acted for Dipson. After Osborne had bid more than $25,000 for the whole property the bidding was suspended, Schine and Dipson conferred, the bidding was thereafter resumed, and a bid of Osborne for $37,600 was the last and highest bid, and for the purposes of this appeal we are to assume that in pursuance of the original conspiracy Schine and Dipson agreed that Osborne's bid should prevail, and that the property should be struck down to him. All the shares in Reliance Theatres, Inc., thereupon passed to Dipson, who in turn transferred them to Schine. In June, 1935, Reliance Theatres, Inc., had brought an action under the Anti-Trust Acts in the Western District of New York against Schine Chain Theatres, Inc., and other corporations for damages caused to its business by the conspiracy. This claim Reliance Theatres, Inc., released on October 10, 1936, and the release was followed on November 23, 1936, by a judgment dismissing the complaint.

The plaintiff's argument is that, since the Supreme Court in Schine Chain Theatres v. United States, 334 U.S. 110, 68 S.Ct. 947, 92 L.Ed. 1245, decided that the defendants had been engaged in a conspiracy under the Anti-Trust Acts, Dickinson and the plaintiff as his successor, as shareholders would have made out a prima facie case against the defendants under § 16, Title 15 U.S.C.A. However, so far as the action depends upon any injury to Reliance Theatres, Inc., the plaintiff's claim is only derivative from that injury and it is well established that he has no separate claim under the Anti-Trust Acts,[1] but must be content with the increase in value of his shares because of any recovery by the corporation. That was true before the passage of the Clayton Act in 1914,[2] which is a circumstance of importance in interpreting the Clayton Act itself.[3]

However, the plaintiff alleges that he has an additional claim, quite aside from any loss as a shareholder from the injury caused to the corporation. This position he asserts in such indefinite terms that we are not quite sure of its basis; but, as we understand it, it is that the sale of the shares at the auction in 1936, resulted from an illegal stifling of bids by agreement between Dipson and Shine, and since that was in pursuance of the original conspiracy, it was a separate wrong, individual to Dickinson's executors, for which an action will lie. It would seem on this theory that at best any recovery would be limited to the difference between the value of the shares, depreciated as they were by the conspiracy but sold at a fair auction, and the actual price that they fetched at the auction conducted as it was. However, we shall not take up that question because, as we understand the authorities, the Anti-Trust Acts do not cover such losses.

1. Westmoreland Asbestos Co. v. Johns-Manville Corp., D.C., 30 F.Supp. 389, affirmed on opinion below, 2 Cir., 113 F.2d 114; Peter v. Western Newspaper Union, 5 Cir., 200 F.2d 867; Gerli v. Silk Association, D.C.S.D.N.Y., 36 F.2d 959.

2. Loeb v. Eastman Kodak Co., 3 Cir., 183 F. 704; Ames v. American T. & T. Co., C.C.Mass., 166 F. 820.

3. Apex Hosiery Co. v. Leader, 310 U.S. 469, 483, 60 S.Ct. 982, 84 L.Ed. 1311.

It is indeed true that a shareholder may sue for injury to his shares because of conduct that is also an injury to the corporation. For example, Ritchie v. McMullen, 6 Cir., 79 F. 522 upheld the claim of a shareholder who had lost his shares by the misconduct of a pledgee although this wrong was also a wrong to the corporation. As a new question it might perhaps be argued that if a shareholder, or a creditor, or any other person has been injured by a conspiracy under the Anti-Trust Acts, a claim arises in his favor quite separate from any claim of the corporation. Be that as it may, this has not been the course of the decisions, which have distinguished between injuries arising directly from a conspiracy and those that are only "indirectly" or "incidentally" its result. Such was the situation in Loeb v. Eastman Kodak Co., supra, 183 F. 704, 709; Westmoreland Asbestos Co. v. Johns-Manville Co., supra, 30 F.Supp. 389, affirmed 113 F.2d 114; Peter v. Western Newspaper Union, supra, 200 F.2d 867, 872, 873; Productive Inventions v. Trico Products Corp., 2 Cir., 224 F.2d 678; and Gerli v. Silk Association of America, supra, 36 F.2d 959. These cases decide, not only that the shareholder is not entitled to recover by separate action for his share of the corporate loss, but that for relief from any injury suffered by him individually, even though it has resulted from the execution of the conspiracy, he must look to the general municipal law. The liabilities that the Anti-Trust Acts create are confined to injuries immediately affecting interstate commerce. A close parallel is Peterson v. Borden Co., 7 Cir., 50 F.2d 644, where the plaintiff asserted that the defendants, as a preliminary to the execution of a conspiracy to monopolize the milk business, procured by fraud his shares of stock in one of the corporations merged in restraint of trade. Alschuler, J., said (at pages 645, 646) that the "statute was not designed to give to stockholders who have been defrauded in the sale of their stock treble damages for their injuries, nor indeed any new or additional remedy for such injury." If such a shareholder "has sustained injury in the sale of his stock through the fraudulent conduct of the purchaser he does not thereby become a 'person who shall be injured in his business or property by reason of anything forbidden in the anti trust laws.'" It is not therefore because Dickinson's executors may not have been injured, if Schine and Dipson stifled the bidding at the auction, that no action will lie. We may indeed assume that it would have been possible for them to reopen the sale, reacquire the shares, and then compel Reliance Theatres, Inc., to bring suit against the Schine conspiracy to recover treble damages, by which the value of their shares would have been correspondingly enhanced. The action at bar will not lie because all claims under the Anti-Trust Acts rest upon wrongs done by the suppression of competition and must be initiated by a party whose commerce has been directly injured.

Judgment affirmed.