Jerome **LIEBERTHAL**, Plaintiff,

v.

**NORTH COUNTRY LANES, INC.**, Sports Arenas, Inc., Jack E. Gellman, Bowlers Management, Inc., Plattsburgh Lanes, Inc., Consolidated Bowling Corp., and Robert Sidel, Defendants.

United States District Court
S. D. New York.
Sept. 12, 1963.

Sulzberger & Sulzberger, New York City, for plaintiff; Seymour S. Epstein, New York City, of counsel.

Tenzer, Greenblatt, Fallon & Kaplan, New York City, for defendants Sports Arenas, Inc., North Country Lanes, Inc. and Robert Sidel; Bernard H. Goldstein, Martin L. Fried, New York City, of counsel.

WYATT, District Judge.

Three of the named defendants—North Country Lanes, Inc., Sports Arenas, Inc. and Robert Sidel—move to dismiss the action because the amended complaint fails to state a claim against defendants upon which relief can be granted. Fed. R.Civ.P. 12(b) (6).

The action is for treble damages under the Sherman Anti-Trust Act (15 U.S.C. § 1 and following, specifically § 15). There is no diversity of citizenship alleged; the jurisdiction of this Court is invoked solely under the authority of 15 U.S.C. § 15.

The action was dismissed by Chief Judge Ryan on April 26, 1963, because the complaint did not state a claim upon which relief could be granted. The memorandum opinion by Chief Judge Ryan stated in substance that the averments of the complaint were not sufficient to show any restraint of *interstate*, as opposed to intrastate, commerce.

Leave was given by Chief Judge Ryan to serve an amended complaint and plaintiff did so. Thereafter this motion was made.

Decision of the motion requires examination of (a) the complaint, (b) the reason it was held insufficient by Chief Judge Ryan, (c) what additional averments are contained in the amended complaint, and (d) whether the averments in the amended complaint as added to are now sufficient.

The complaint alleged in substance that plaintiff had leased to North Country premises for the operation of bowling alleys (presumably in Plattsburgh, New York, but this is not specifically alleged), that defendants Bowlers Management, Consolidated and Plattsburgh Lanes operated bowling alleys in the Plattsburgh area, that all the defendants conspired to cause North Country to cancel its lease with plaintiff and North Country did so, and that this action reduced and restricted the bowling alley business in the Plattsburgh area to the benefit of the operators other than North Country. The connection with interstate commerce was apparently based on an averment that the Plattsburgh area drew trade (and presumably bowlers) from Vermont and Canada.

Chief Judge Ryan found the complaint insufficient because no sufficient effect on interstate commerce was alleged and specifically that crossing by bowling customers of state or international borders did not change an intrastate activity into an interstate one. Chief Judge Ryan, referring to Monument Bowl, Inc. v. Northern Cal. Bowling Prop. Ass'n, 197 F.Supp. 208 (N.D.Cal.1961), said that "the operation of a bowling alley is normally essentially one of local character".

The amended complaint continues to allege that the Plattsburgh area draws trade from Vermont and Canada, but it contains additional averments that

a. the building leased by plaintiff to North Country had been erected, the equipment had not yet been installed, and the lease included a percentage of the returns to be received from the bowling business and from the sale of items of mer-

chandise (presumably food and beverages principally);

b. bowling alleys in Vermont and Canada compete with those in the Plattsburgh area;

c. North Country actively solicited the patronage of bowling leagues in Vermont and Canada;

d. North Country advertised in Canadian and Vermont newspapers, soliciting customers in Canada and Vermont to come to Plattsburgh to bowl and "used radio and television media" (it is not stated where) also to solicit such customers;

e. North Country and the other defendant operators of bowling alleys brought, or intended to bring, into Plattsburgh bowling alley equipment which moved in (or would move) in interstate commerce from outside New York;

f. the equipment "scheduled to be brought into Plattsburgh" in interstate commerce was substantial and included "kitchen and service equipment";

g. the "equipment, supplies and appurtenances being brought to Plattsburgh were items of interstate commerce for delivery to the ultimate consumer" (which seems strange, considering the nature of a bowling business);

h. the equipment for the 32 alleys in the building of plaintiff, which was to be in interstate commerce, did not arrive;

i. the merchandise to be sold by North Country in the premises, which was to be in interstate commerce, did not arrive;

j. competition with bowling alleys in Canada and Vermont was lessened;

k. the flow of bowling alley equipment in interstate commerce was restrained; and

l. defendants acted "for the express purpose" of stopping the interstate flow of "bowling alley equipment and material" into Plattsburgh.

The issue can be stated simply by borrowing some of the language of Mandeville Island Farms v. American Crystal Sugar Co., 334 U.S. 219, 222, 68 S.Ct. 996, 999, 92 L.Ed. 1328 (1948; emphasis supplied): does the amended complaint now show a conspiracy "to restrain *interstate* trade and commerce or one thus affecting only purely *local* trade and commerce"?

The decision of this issue in various fact situations has involved difficulty, confusion, and some inconsistency not only in the lower Federal Courts but in the Supreme Court as well.

■ Although not spelled out in the amended complaint, the nature of the sport (or recreation) of bowling is a well known fact of which the Court can take judicial notice. At first sight, the operation of bowling alleys would appear to be entirely local, and not interstate. So Judge Ryan has already held, and the additional averments by way of amendment do not indicate any different result.

The professional baseball cases would be supporting authority here but their history is so unique and exceptional that they should probably be put to one side. Federal Baseball Club of Baltimore v. National League of Professional Baseball Clubs, 259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898 (1922); Toolson v. New York Yankees, 346 U.S. 356, 74 S.Ct. 78, 98 L.Ed. 64 (1953).

As applied to local exhibitions (which are in any event to be distinquished from participation on an individual basis in a sports activity such as bowling, swimming, etc.), the Supreme Court has found a sufficient connection with interstate commerce in United States v. Shubert, 348 U.S. 222, 75 S.Ct. 277, 99 L.Ed. 279 (1955) and United States v. International Boxing Club, of N. Y. Inc., 348 U.S. 236, 75 S.Ct. 259, 99 L.Ed. 290 (1955). In the Shubert case, the complaint show-

ed (348 U.S. at 225, 75 S.Ct. at 279, 99 L.Ed. 279):

"a constant, continuous stream of trade and commerce between the States of the United States, consisting of the assemblage of personnel and property for rehearsals, the transportation of said personnel and property to various cities throughout the United States, the making and performing of contracts under which attractions are routed and presented in various States of the United States, and the transmission of applications, letters, memoranda, communications, commitments, contracts, money, checks, drafts and other media of exchange across State lines."

In the International Boxing case, the complaint showed, among other things, the sale of tickets across state lines, sale of motion picture rights to thousands of theatres in many states, sale of television rights to be sent to receivers in many states, and that 25% or more of total revenue came from sale of radio, movie and television rights (even so, one of the justices dissented on this point). Cf. Carroll v. American Fed. of Musicians of U.S. and Canada, 295 F.2d 484 (2d Cir., 1961). See also Washington Professional Basketball Corp. v. National Basketball Ass'n, 147 F.Supp. 154 (S.D.N.Y. 1956).

These situations are entirely unlike the operation of bowling alleys, where the business supplies only the premises and equipment and the customer entertains himself; he is not entertained by the exhibition of persons or apparatus gathered in interstate commerce. The flow to the bowling alley of equipment and appurtenances is not averred in the amended complaint to be continuous and it could not be; it is virtually a "one-shot" affair, the equipment being durable and long lasting. There is no averment that radio, movie or television rights are sold in respect of the activities conducted at the Plattsburgh alleys and obviously they are not. That radio and television are used to solicit customers for the local activity seems irrelevant; the radio and television stations may be engaged in interstate commerce but not, merely by use of these media, is the advertiser.

Plaintiff cites United States v. Employing Plasterers' Ass'n of Chicago, 347 U.S. 186, 74 S.Ct. 452, 98 L.Ed. 618 (1954) and United States v. Women's Sportswear Mfgrs. Ass'n, 336 U.S. 460, 69 S.Ct. 714, 93 L.Ed. 805 (1949). These cases are not in point because they relate to the interstate sale of goods. Where the process of production, transportation and sale of goods in interstate commerce is a continuous one, a local restraint either at the beginning of the process (as in Mandeville Farms, above) or at the end of the process (as in Employing Plasterers, above) may nevertheless directly affect interstate commerce.

Certainly such is not the situation here. On the contrary the bowling alley business is more like the operation of barber shops (Hotel Phillips, Inc. v. Journeymen Barbers, Hairdressers, Cosmetologists, and Proprietors Intern. Union of Amer., 195 F.Supp. 664, W.D.Mo. 1961, affirmed per curiam 301 F.2d 443, 8th Cir., 1962), or hospitals (Elizabeth Hospital, Inc. v. Richardson, 269 F.2d 167, 8th Cir., 1959), or publishing legal notices (Page v. Work, 290 F.2d 323, 9th Cir., 1961). In these cases, incidental flow of supplies in interstate commerce to the local enterprise, or travel in interstate commerce of customers of the local enterprise, or soliciting business in other states for the local enterprise, did not make the local enterprise a part of interstate commerce under the Sherman Anti-Trust Act. See also Coulter Funeral Home, Inc. v. Cherokee Life Ins. Co., 32 F.R.D. 358 (E.D.Tenn.1963) dealing with the question whether operation of funeral homes is interstate commerce under the Act.

The motion to dismiss the action will be granted. Technically, the dismissal should probably be for lack of jurisdiction over the subject matter (15 U.S.C. § 15; Fed.R.Civ.P. 8(a) (1), 12(b) (1))

but this does not appear to be of any real significance.

While not raised by counsel, there is another reason why the motion must be granted. This is that, from the face of the amended complaint, is seems reasonably clear that plaintiff is not a "person * * * injured in his business or property" (15 U.S.C. § 15) by any violation of the Sherman Anti-Trust Act. The motion must be granted on this ground also.

As to the nature of the "property" of plaintiff, it appears from the amended complaint to have been real estate and that plaintiff had made a lease thereof to North Country. It also appears from the amended complaint that plaintiff "had agreed to and [presumably at least by March 25, 1959] had erected a building" on the real estate in which North Country was to operate bowling alleys. The claimed unlawful conspiracy was that North Country would serve a notice of termination of the lease on the ground that the building had not been completed by March 1, 1959. The lease is not made part of the amended complaint but it is evident that under the lease there was a right to serve such a notice. There is no averment that the building in fact had been completed by March 1, 1959, or that service of the notice—apart from the claimed conspiracy—was in any way wrongful. Indeed, the contrary appears, for the amended complaint states that North Country "might subsequently determine to rescind such notice" and that this would "permit" plaintiff to complete the building.

It thus is shown that at the time of the claimed conspiracy plaintiff owned real estate which had been leased to one of the conspirators, which conspirator at that time had a right to cancel the lease.

Plaintiff is in by no means as strong a position, therefore, as the landlords in the motion picture cases. They had firm leases with a rental consisting of a fixed minimum and a percentage of receipts above this. They sued for loss of percentage rents attributable to antitrust violations (in which their lessees, as here, were said to have participated) in respect of pictures to be shown in the leased buildings. They were denied recovery as having been indirectly and incidentally injured by the violations alleged, and thus not persons "injured in his business or property" within the meaning of the statute. Melrose Realty Co. v. Loew's Inc., 234 F.2d 518 (3d Cir., 1956) cert. denied 352 U.S. 890, 77 S.Ct. 128, 1 L.Ed. 2d 85 (1956); Harrison v. Paramount Pictures, Inc., 115 F.Supp. 312 (E.D.Pa. 1953), affirmed per curiam 211 F.2d 405 (3d Cir., 1954), cert. denied 348 U.S. 828, 75 S.Ct. 45, 99 L.Ed. 653 (1954). The same principle seems to have been applied in this Circuit in a landlord case, although not a motion picture landlord. Westmoreland Asbestos Co. v. Johns-Manville Corp., 30 F.Supp. 389 (S.D. N.Y.1939), affirmed per curiam 113 F. 2d 114 (2d Cir., 1940). Thereafter the result and reasoning in the Harrison case were specifically approved by the Court of Appeals for this Circuit in denying recovery for antitrust violations to a patentee who had granted to another an exclusive license. Productive Inventions v. Trico Products Corp., 224 F.2d 678 (2d Cir., 1955), cert. denied 350 U.S. 936, 76 S.Ct. 301, 100 L.Ed. 818 (1956). The Court there declared (224 F.2d at 679):

> "Those harmed only incidentally by anti-trust violations have no standing to sue for treble damages; only those at whom the violation is directly aimed, or who have been directly harmed may recover."

A later decision in the same area by the Court of Appeals for this Circuit is Bookout v. Schine Chain Theatres, 253 F.2d 292 (2d Cir., 1958). The claim was under the anti-trust laws by a one-third stockholder of an injured corporation. As for that part of the claim based on injury to the corporation, it was dismissed with brief discussion of principles "well established" (253 F.2d at 294). But the claim was also that the stock had been sold and because of the anti-trust violations it brought less than a fair price. The Court considered this part of the claim at greater length but

rejected it also. Judge Learned Hand stated (253 F.2d at 295):

"The liabilities that the Anti-Trust Acts create are confined to injuries immediately affecting interstate commerce."

And again:

"The action at bar will not lie because all claims under the Anti-Trust Acts rest upon wrongs done by the suppression of competition and must be initiated by a party whose commerce has been directly injured."

There is a decision in the Seventh Circuit, Congress Building Corp. v. Loew's Inc., 246 F.2d 587 (7th Cir., 1957), where the Court discussed but declined to follow the Melrose and Harrison decisions. The decision in Steiner v. 20th Century-Fox Film Corp., 232 F.2d 190 (9th Cir., 1956) is based on a different set of facts in that the conspiracy was claimed to have been to force the landlord to make a lease with less than a reasonable rent, so that the lessor was directly affected, rather than through the lessee. The Court in Steiner cited Harrison with apparent approval, but distinguished it on the facts as indicated.

In this Court, Judge Cashin has declined to follow the Third Circuit and, feeling that there was no direct authority in this Circuit, followed the Congress decision of the Seventh Circuit. Erone Corp. v. Skouras Theatres Corp., 166 F. Supp. 621, 624 (S.D.N.Y.1957). On the other hand, Judge Dimock later followed the Third Circuit, saying: "The fact that plaintiffs were the landlords of the theatres avails them nought", citing Harrison and Melrose. Skouras Theatres Corp. v. Radio-Keith-Orpheum Corp., 193 F.Supp. 401, 407 (S.D.N.Y.1961).

■ Considering the approval of the Harrison decision by the Court of Appeals for this Circuit and considering the later views of that Court expressed in Bookout, my conclusion is that in this Circuit a landlord may not recover for anti-trust violations affecting the business of his tenant, whether the tenant be a party to the violation (as in Harrison) or not.

For the reasons set forth, the motion of the three defendants to dismiss the action as to them is granted because from the amended complaint, it appears that there is a lack of jurisdiction over the subject matter and a failure to state a claim upon which relief can be granted.

So ordered.