Louis E. DAILEY, Jr., Appellant,

v.

The QUALITY SCHOOL PLAN, INC.,
et al., Appellees.

No. 23673.

United States Court of Appeals
Fifth Circuit.

July 6, 1967.

Rehearing Denied Aug. 11, 1967.

John P. Koons, Dallas, Tex., for appellant.

James A. Baker, III, Alfred H. Ebert, Jr., Houston, Tex., Morris Harrell, Dallas, Tex., Andrews, Kurth, Campbell & Jones, Houston, Tex., Rain, Harrell & Emery, Morris Harrell, Dallas, Tex., for appellee, The Quality School Plan, Inc.

Neth L. Leachman, Royal H. Brin, Jr., Dallas, Tex., for appellee, Cowles Communications, Inc.

Before BELL and GODBOLD, Circuit Judges, and NOEL, District Judge.

GRIFFIN B. BELL, Circuit Judge:

This appeal involves a suit for treble damages under § 4 of the Clayton Act, 15 U.S.C.A. § 15. The suit is premised on alleged violations of § 1 of the Sherman Act, 15 U.S.C.A. § 1, and § 7 of the Clayton Act. 15 U.S.C.A. § 18. The District Court sustained motions to dismiss on behalf of defendants The Quality School Plan, Inc., and Cowles Magazine and Broadcasting, Inc.[1] The court concluded that the complaint, as amended, failed to state a claim within its jurisdiction or upon which relief could be granted against either Quality or Cowles.

Dailey, the plaintiff in the suit, was an employee of Educational Reader's Service, Inc. (hereinafter ERSI), which was acquired by Quality. His services were terminated by Quality some five months thereafter. The gist of his complaint is two-fold. First, he alleges that he lost his position by reason of defendants having combined and conspired to restrain interstate commerce in violation of § 1 of the Sherman Act, supra. Second, he charges that he lost his position through the acquisition of ERSI, his employer, by Quality, his successor employer, and by the participation of Cowles in the acquisition, all of which he says was in violation of § 7 of the Clayton Act, supra.

Dailey contends that the court erred in dismissing his complaint. He urges that an employee of his type is in the class of persons entitled to protection under § 4 of the Clayton Act, supra, and that he was proximately injured as a result of the alleged unlawful acts of the defendants. The issue presented is whether it was error for the District Court to dismiss the complaint. We affirm in part and reverse in part.

I.

The following facts are found in the complaint. The general business involved is that of selling subscriptions to magazines under a "school plan" method. Basically this business consists of offering a package of magazine publications to educational institutions. These institutions sell the magazines through their students to the public. The sales are on the basis of commissions ranging from thirty to fifty per cent. The larger the commission the greater will be the merchantability of the plan. The defendants here are dealing in large circulation magazines on which it is possible to offer a fifty per cent commission.

Prior to the acquisition of ERSI by Quality which occurred on February 1, 1965, Quality, ERSI, and Curtis Publishing Co. controlled ninety five per cent of the "school plan" magazine market or business in the United States. The defendant Quality was formed by Reader's Digest and Time, Inc. in 1963, after an unsuccessful attempt by these companies to purchase the Curtis school plan operation. By May 1964 Quality had obtained forty three per cent of the "school plan" market. ERSI was owned by the defendant Cowles and had been in the school plan business for about forty years. In May 1964 it controlled thirty nine per cent of the school plan market.

The plaintiff Dailey had been employed by ERSI for a period of ten years at the time of its acquisition by Quality. He had advanced from the position of a salesman to that of supervisor of the Mississippi Valley area or division. He worked for ERSI under an annual contract which was renewed each year during the ten year period. He was paid an annual salary of $7,540.00 and received a commission of one per cent on the ERSI sales in his area. His total earnings were over $17,000.00 in each of the years 1963 and 1964. The Mississippi Valley area covered six states and

1. The suit was also dismissed as to defendants Time, Inc., Reader's Digest Association, Inc., and Educational Reader's Service, Inc. on jurisdictional grounds. There is no appeal from these dismissals, nor from the dismissal of a breach of contract count as against Quality and Cowles.

appellant had seventeen salesmen working under him.

The substantial market gains made by Quality were effected through the magazines it controlled or those which it was able to share with ERSI. ERSI was vulnerable to this competition and Cowles decided to sell out to Quality. The sale of ERSI to Quality by Cowles gave Quality eighty-two per cent of the "school plan" market with Curtis having the balance.

Subsequent to the acquisition it was necessary for Quality to secure the goodwill of the ERSI salesmen. To this end the general sales manager of Quality agreed to honor Dailey's contract with ERSI up to its expiration on June 30, 1965. He also agreed to employ him for the year commencing July 1, 1965 on substantially the same basis. After the acquisition, Quality divided the country into districts. Dailey was assigned the Dallas district which consisted of Texas, New Mexico, Oklahoma, Arkansas, and the main part of Louisiana, and the Atlanta district, comprised of Tennessee, Mississippi, Alabama, Georgia, Florida, and the remainder of Louisiana. A part of his job was to effectuate a transfer of those salesmen under his supervision into the new company arrangement and this was accomplished.

Once this transition was completed, Quality withdrew the Atlanta district from Dailey, and the Dallas district was reduced by twenty per cent. Dailey's commission rate was also reduced. His services were terminated entirely on August 11, 1965, and he claims that the termination was a result of the acquisition. He alleges as a further result that he now has no opportunity to put to use those skills which he has developed over the large part of his adult life. As a practical matter, he contends, Quality and Curtis now control the school plan business and employment with Curtis is impractical as this would involve competing with the very men he has trained over the past ten years. One further fact alleged, in an effort to hold Cowles, which, as stated, owned ERSI (now defunct), is that representatives of Cowles were placed on the board of directors of Quality after the acquisition.

## II.

It is settled that a motion to dismiss for failure to state a claim upon which relief may be granted should be sustained only where it is manifestly clear that the facts alleged will support no actionable claim. The Supreme Court has stated the general rule as follows:

"In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 1957, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80.

As applied to antitrust pleadings in a case where the complaint was dismissed for lack of jurisdiction and for failure to state a claim upon which relief could be granted, the Supreme Court has said that the test as to sufficiency is whether the claim alleged is wholly frivolous. Radovich v. National Football League, 1957, 352 U.S. 445, 453, 77 S.Ct. 390, 1 L.Ed.2d 456, citing Hart v. B. F. Keith Vaudeville Exchange, 1923, 262 U.S. 271, 43 S.Ct. 540, 67 L.Ed. 977 where the suit was dismissed for lack of jurisdiction only. It would appear, under this test, that the allegations with respect to commerce, and as to the alleged violation of § 1 of the Sherman Act are sufficient to state a barebones claim against Quality and Cowles. This is also true as to the claim under § 7 as it relates to Quality. As will be seen, *infra*, we do not think a claim is stated under § 7 as to Cowles.[2]

The dismissal in the District Court was on the ground that Dailey did not have standing under 15 U.S.C.A. § 15

---

2. Any question as to relevant market, apparently raised here for the first time, is for factual determination in the District Court.

in that he did not fall in the class of persons protected thereunder. This reasoning seems to have rested on two grounds; first, Dailey was not injured in his trade or business, and second, the allegations with respect to causal relationship between the alleged illegal acts and the injury were insufficient. This latter ground refines itself into the question whether the injury to Dailey was direct and not a mere incidental result of the acquisition.[3]

■■ In order to recover in a treble damage suit brought under § 4 of the Clayton Act, it is incumbent upon a plaintiff to allege and prove that he has been "injured in his business or property" by acts of the defendant which are forbidden by the antitrust laws. Martin v. Phillips Petroleum Company, 5 Cir., 1966, 365 F.2d 629. The complaint here so alleges but in the posture of the case we must still consider whether it appears, as a matter of law, that Dailey's position, as described in the complaint, is not business or property within the meaning of § 4. The District Court was of the apparent view that his position was not one contemplated by the statute as being business or property and thus he had no standing to sue. We are constrained to disagree.

The Seventh Circuit has squarely held that the loss of employment by a sales supervisor is injury to business or property within the meaning of § 4. Nichols v. Spencer International Press, Inc., 7 Cir., 1967, 371 F.2d 332. See also Vines v. General Outdoor Advertising Company, 2 Cir., 1948, 171 F.2d 487; Roseland v. Phister Mfg. Co., 7 Cir., 1942, 125 F.2d 417, 139 A.L.R. 1013; and McWhirter v. Monroe Calculating Co., Inc., W.D.Mo., 1948, 76 F.Supp. 456.

These commission sales agent cases where a territory has been developed and where the courts treat the relationship as the business of the salesman or sales manager are to be distinguished from those cases where the business or property is that of the corporation and the claim asserted by stockholders or creditors or employees is derivative. See Martens v. Barrett, 5 Cir., 1957, 245 F.2d 844; and Peter v. Western Newspaper Union, 5 Cir., 1953, 200 F.2d 867; Cf. Waldron v. British Petroleum Co., S.D. N.Y., 1964, 231 F.Supp. 72.

■ This brings us to the second ground of dismissal. Was there a sufficient allegation, in light of the other averments in the complaint, of a direct injury, or of a causal connection between the claimed antitrust violations and the injury? Judge Bryan recently couched this question in terms of whether the plaintiff is in the target area of the illegal practices, and if so, whether he was proximately injured thereby. See South Carolina Council of Milk Producers, Inc. v. Newton, 4 Cir., 1966, 360 F.2d 414, where the court said:

"If a plaintiff can show himself within the sector of the economy in which the violation threatened a breakdown of competitive conditions and that he was proximately injured thereby, then he has standing to sue under section 4. * * * "

That case involved an alleged Sherman Act violation, and we adopt what was said with respect to the proximate cause question for our decision here:

"The pivot of decision presently is whether the defendants' asserted conduct was the proximate cause of the plaintiffs' asserted injury. If the damage was merely incidental or consequential, or if the defendants' antitrust acts are so removed from the injury as to be only remotely causative, the plaintiffs have not been injured 'by reason of anything forbidden in the antitrust laws' as contemplated

---

3. Defendants urge a defense based on the contention that Dailey worked for Quality after the acquistion and was thus *in pari delicto* with defendants and barred. There is no indication that the district court considered this factual defense in reaching its decision. It is for consideration on remand but see Peter v. Western Newspaper Union, 5 Cir., 1953, 200 F.2d 867, 872; Ring v. Spina, 2 Cir., 1945, 148 F.2d 647, 653.

by the Clayton Act. * * * This is a critical determination which must be made by the court on the evidence offered by the plaintiff. At this point the court is in a position to foreclose claims by those only distantly or tenuously hurt. Thus the apprehension of 'wind-fall' recoveries is dispelled. In this process the court would rule upon the substantiality of the claim as it would in other damage actions." [pp. 419, 420]

We treat the contentions of a failure to allege a direct injury and a failure to allege a causal connection as simply a question of alleging proximate cause. As such, we hold the complaint sufficient.

### III.

■ .In addition, Cowles urges that no cause of action lies for damages on the basis of a violation of § 7 of the Clayton Act. 15 U.S.C.A. § 18. This is a question concerning which some uncertainty has crept into the law through the decisions. The better view to us is that § 7 is included in the term "antitrust laws" as that term is used in § 4 of the Act.[4] The Third Circuit has so stated although this particular argument was apparently not made. New Jersey Wood Finishing Company v. Minnesota Mining and Manufacturing Company, 3 Cir., 1964, 332 F.2d 346, aff'd sub nom. Minnesota Mining and Manufacturing Company v. New Jersey Wood Finishing Company, 1965, 381 U.S. 311, 85 S.Ct. 1473, 14 L.Ed.2d 405. See also Julius M. Ames Co. v. Bostitch, Inc., S.D. N.Y., 1965, 240 F.Supp. 521 where the argument was rejected; and Note, 64 Col.Law Review, 597 (1964). There are authorities to the contrary. Gottesman v. General Motors Corporation, S.D. N.Y., 1963, 221 F.Supp. 488, cert. den., 379 U.S. 882, 85 S.Ct. 144, 13 L.Ed.2d

88; Bailey's Bakery, Ltd. v. Continental Baking Company, D. Hawaii, 1964, 235 F.Supp. 705; Highland Supply Corporation v. Reynolds Metal Co., 8 Cir., 1964, 327 F.2d 725, in footnote 3, and on remand see Highland Supply Corporation v. Reynolds Metal Company, E.D.Mo., 1965, 245 F.Supp. 510. We see no escape from the logic that § 7 of the Clayton Act is an antitrust statute within the scope and meaning of § 4 of the Act and so hold.

■ This leaves one question. Cowles contends that the complaint should be dismissed as to it insofar as the cause of action against it rests on § 7 of the Clayton Act. The argument is that § 7 is directed against the acquiring corporation only and not against the seller. This position is well taken. § 7 by its terms proscribes only the acquiring corporation. There seems to be no decision to this effect but the language of the statute is clear. We thus affirm the dismissal as to Cowles on the § 7 charge.

In sum, we hold Dailey is entitled to prove his claim as we have found it to have been stated. Whether the proof is sufficient as to violation of the antitrust laws, or on proximate cause or injury are matters left to the determination of the trial court after the facts have been considered.

Affirmed in part; reversed and remanded in part for further proceedings not inconsistent herewith.

On Petition for Rehearing

PER CURIAM:

The motion of appellee Cowles Communications, Inc. for clarification of the Court's opinion rendered on July 6, 1967 is denied.

The alternative motion of appellee, Cowles, for a rehearing is also denied.

---

4. 15 U.S.C.A. § 15
"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor * * * and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."