O. C. **MENDENHALL** et al., Plaintiffs-Appellees,

v.

The **FLEMING COMPANY, INC.**, and **Minimax**, Defendants-Appellants.

No. 74–1943.

United States Court of Appeals, Fifth Circuit.

Dec. 9, 1974.

William J. Merrill, Houston, Tex., H. Blair White, Chicago, Ill., for defendants-appellants.

Joe H. Reynolds, Lloyd R. Cunningham, Jr., J. Donald Stillwell, Gary B. Maddox, Houston, Tex., for plaintiffs-appellees.

Before DYER, SIMPSON and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Plaintiffs, as individuals, seek to recover treble damages for an alleged anti-trust violation under Section 1 of the Sherman Act, 15 U.S.C. § 1 and Sections 3 and 4 of the Clayton Act, 15 U.S.C. §§ 14 and 15, arising from the operation of retail grocery stores by a corporation they had created. Defendants' motion for summary judgment was overruled by the district court in an order which was then duly certified and permitted to be appealed to this court under 28 U.S.C. § 1292(b). Because the plaintiffs lack standing to assert this claim under Martens v. Barrett, 245 F.2d 844 (5th Cir. 1957) and Peter v. Western Newspaper Union, 200 F.2d 867 (5th Cir. 1953), we reverse.

The Fleming Co., Inc. (Fleming Company) subleased a retail food store location to the plaintiffs, Mendenhall and Cutsinger, and contemporaneously executed with them a Store Accounting Service Agreement and a Minimax Sales/Service Agreement, which among other things required the food store operated at the sublease location to make purchases from Fleming Company. Mendenhall and Cutsinger subsequently took from a third party an assignment of a Fleming Company sublease on a second retail food store location, subject to a similar tying arrangement requiring purchases from Fleming. Mendenhall and Cutsinger organized a corporation, D & S Food Marts, Inc., (D & S Marts) and were the owners of all its outstanding capital stock. D & S Marts was the operator of both food store businesses at all pertinent times. It made rental payments pursuant to the sublease agreements to Fleming and paid for all merchandise supplied to the stores. The only compensation received by Mendenhall and Cutsinger for their participation in these businesses were salaries paid by D & S Marts.

In April of 1970, Rice Food Markets, Inc., (Rice Markets) made a written offer to Mendenhall and Cutsinger related to the two food store businesses. It offered to purchase the fixtures and equipment located in the two stores for 420,000 dollars and to purchase the store inventories at a "reasonable value" to be later determined through good faith negotiations. The offer was conditioned upon termination of the subleases held by Mendenhall and Cutsinger and the transfer of the basic leases to the properties involved from Fleming Company to Rice Markets without further compensation. The offer also required an agreement from Mendenhall and Cutsinger not to compete for a limited time within a limited distance. The proof adduced on summary judgment indicated that Fleming Company refused to transfer the basic leases and that for this reason the offer to Rice Markets was not consummated.

Two months later, Mendenhall and Cutsinger sold all outstanding stock of D & S Marts to Gerland's Food Fair, Inc. (Gerland's). As a part of this agreement, plaintiffs assigned their subleases and store accounting and sales service agreements to Gerland's.

In argument, Mendenhall and Cutsinger seek to characterize the loss sued for as the difference in value of their sublease estates measured by the Rice Markets offer and the Gerland's sale. However, the record makes it clear that the loss sustained and the recovery sought were entirely in corporate values. For example, the complaint asserts:

That as a result of these direct violations of the Sherman Anti-trust Act and the Clayton Act, the Plaintiffs, for a period of about twelve (12) months, were required to deal strictly in goods and merchandise sold by the

Defendant and were precluded from dealing in a competitive market with respect to the goods and merchandise they purchased for resale to the public.

Yet, it is without dispute that only D & S Marts bought and resold all food stuffs and other merchandise involved in this action.

In his deposition, Cutsinger described the method of computation of the loss sued for in the following terms, all of which referred to D & S Marts resources:

| | |
|---|---:|
| Total Current Assets | $237,684 |
| Amount offered for Furniture and Fixtures | 420,000 |
| Other Assets | 32,068 |
| Subtotal | 689,752 |
| Less: Inventory | 522,116 |
| Liquidation Worth under Rice Offer | 167,636 |
| Amount Paid by Gerland | 45,870 |
| Difference (Damages Claimed) | $121,766 |

---

Martens v. Barrett, *supra*, had a closely similar factual matrix. There we held " . . . where the business or property allegedly interfered with by forbidden practices is that being done and carried on by a corporation, it is that corporation alone, and not its stockholders (few or many), officers, directors, creditors or licensors, who has a right of recovery, even though in an economic sense real harm may well be sustained as the impact of such wrongful acts bring about reduced earnings, lower salaries, bonuses, injury to general business reputation, or *diminution in the value of ownership*." 245 F.2d at 846 (footnotes omitted) (emphasis supplied). Furthermore, we have specifically ruled that a stockholder cannot recover for a personal loss by asserting and proving that the defendants' wrongdoing has caused him to sell his corporate stock at a depressed value, for by the very act of selling at a lower price he has established that the direct damage done was to corporate worth. The loss in his stock's sale price is a real economic harm to him, but is both indirect to and duplicative of the corporation's right of action. Peter v. Western Newspaper Union, *supra*.[1]

When Mendenhall and Cutsinger sold their corporate stock to Gerland's, they sold their right to control the very cause of action they now attempt to assert. This suit cannot reclaim that corporate cause of action by asserting the same damage sustained by the corporation also served to diminish the value of their individually held estates.

The order of the district court denying summary judgment is

Reversed.

1. Also, in *Martens* we cited with approval the decision of the Third Circuit in Melrose Realty Co. v. Loew's Inc., 234 F.2d 518 (3d Cir. 1956). There, a corporate business was the object of asserted anti-trust violations. An individual whose lease agreement covering the business premises provided for him to receive a percentage of corporate profits was held to lack standing to maintain a claim under Section 4 of the Clayton Act for the diminution in his rentals caused by defendants alleged wrongdoing.