659 F.2d 528
 1981-2 Trade Cases 64,326
 Louis F. GUZIK, Jr., Roy C. Turcotte, Jesus Chavez, and wife
Alicia Chavez, individually and on behalf of all
other persons similarly situated,
Plaintiffs-Appellants,
v.
STATE BAR OF TEXAS, Defendant-Appellee.
 No. 80-1964
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Unit A*
 Oct. 15, 1981.
 J. L. Covington, Brownsville, Tex., H. Clyde Farrell, Austin, Tex., for plaintiffs-appellants.
 Jerry L. Zunker, Office of Gen. Counsel, Steven Lee, Asst. Gen. Counsel, Austin, Tex., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Texas.
 Before BROWN, POLITZ and WILLIAMS, Circuit Judges.
 POLITZ, Circuit Judge:
 
 
 1
 We review a summary judgment in favor of the defendant in this private antitrust action for treble damages and injunctive relief against the State Bar of Texas. The district court granted summary judgment based on its finding that complainants lack standing to sue. We affirm.
 
 
 2
 Forming the polestar of this litigation are two legal forms printed and sold by the Texas State Bar. The first is a form real estate note, apparently widely used by lenders and borrowers, which includes printed provisions and blank spaces. In a typical instance, the blanks would be filled in and the printed portions would be accepted as written or modified to suit the parties. The note contains an acceleration clause which matures the entirety of the debt if installments are not timely paid. The note also contains a provision for attorney's fees in the amount of 10% of the unpaid balance, payable to the lender, in the event of the borrower's default. The second form challenged in this lawsuit is a builder's and mechanic's lien (with Power of Sale) note used in the financing of building construction. This note contains an attorney's fee stipulation identical to that contained in the real estate lien note.
 
 
 3
 Appellants Louis F. Guzik and Roy C. Turcotte, in the process of financing their restaurant on South Padre Island, Texas, executed a real estate lien note for $180,000. The form note used was that marketed by the State Bar of Texas. Guzik and Turcotte became dissatisfied with their bank and began efforts to transfer their debt to another institution. During this period they missed a payment and the bank accelerated the balance due and referred the note for collection to their attorney. The attorney, who spent approximately four hours on the file, received $4,544.76 in fees when appellants paid the debt. This represented one-fourth of the amount called for under the 10% attorney's fee provision.
 
 
 4
 Appellants Jesus and Alicia Chavez executed a builder's note to cover the construction of a house. The form note used was printed and sold by the State Bar of Texas. The contractor negotiated the note to a savings and loan association. Asserting the contractor's failure to complete construction, the Chavezes refused to pay the note. The savings and loan accelerated the remaining balance and the Chavezes allege that they are subject to enforcement of the 10% attorney's fee clause.
 
 
 5
 Appellants seek treble damages and injunctive relief under the Sherman and Clayton Acts, 15 U.S.C. §§ 1, 15 and 26. Upon due notice, the district judge converted defendant's motion to dismiss into a motion for summary judgment. Fed.R.Civ.P. 56. The district judge concluded that the complainants had failed to establish standing to sue the State Bar of Texas under either Article III of the United States Constitution or under the antitrust statutes.
 
 
 6
 The question of standing under the injunctive section of the Clayton Act § 16, 15 U.S.C. § 26, focuses on whether a complainant can demonstrate "a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur." Jeffrey v. Southwestern Bell, 518 F.2d 1129, 1132 (5th Cir. 1975) (citing Zenith Radio Corp. v. Hazeltine Research, 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969)). Under the treble damages provision of the Clayton Act, 15 U.S.C. § 15, the complainant must come within the "target area" of the unlawful conduct. See Dailey v. Quality School Plan, Inc., 380 F.2d 484, 487 (5th Cir. 1967). In Jeffrey v. Southwestern Bell, 518 F.2d 1129, 1131 (5th Cir. 1975), we held that to attain standing under Section 15, "a person must be one against whom the conspiracy is aimed. Or, put in plutonomic terms, the complainant must show that he is within that sector of the economy which is endangered by a breakdown of competitive conditions in a particular industry." Under either test, there are two questions which must be answered: (1) do the alleged facts support the claim of an antitrust violation,[1] and (2) were the complainants injured by the alleged anti-competitive acts. The "target area" test under the treble damages clause prescribes a more restrictive standing inquiry.[2]
 
 
 7
 Appellants allege that the State Bar of Texas is engaged in the fixing of attorney's fees. In Goldfarb v. Virginia State Bar, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), the Supreme Court held that a mandatory minimum fee schedule published by a county bar association and enforced by the Virginia State Bar constituted price fixing in violation of Section 1 of the Sherman Act. The Court, however, stated: "A purely advisory fee schedule issued to provide guidelines, or an exchange of price information without a showing of an actual restraint on trade, would present us with a different question." Id. at 781, 95 S.Ct. at 2010. The State Bar of Texas has not promulgated a mandatory minimum fee schedule as relates to the attorney's fees in these two instances. This case presents a "different question."Accepting, arguendo, that non-mandatory price fixing in some situations might be considered a violation of Section 1 of the Sherman Act, United States v. Real Estate Boards, 339 U.S. 485, 70 S.Ct. 711, 94 L.Ed. 1007 (1950), the record before us falls far short of establishing the involvement of the State Bar of Texas in the setting of prices. The State Bar of Texas does not require its members to use the forms it publishes; there are no sanctions whatsoever for one who opts not to use the forms. There is nothing in the record to indicate that the State Bar of Texas has taken any position, public or private, on the attorney's fee provision. As the district judge incisively found and noted:
 
 
 8
 The forms are simply available for sale just like any other form book. Furthermore, there is absolutely no prohibition against the borrower and the lender, and incidentally their attorneys, modifying the terms of the contract to reflect an increased or a decreased fee or even none at all. That decision is left to the parties and the free enterprise system, subject, of course, to the Texas rule of reasonableness. This ability alone should effectively negate any fear of rigid price floors being promulgated. The actual terms of the notes in question are determined by negotiation between the lender and the borrower and not by the forms. The notes in the present case were payable to the lender and not to the attorney nor the State Bar. The lender at all times remained free to agree to any other terms if it so desired. Also in this regard, and probably most important, the complaint and the file are completely devoid of any allegation or proof that anyone forced the Plaintiffs to sign the forms or that all lenders absolutely require the use of the State Bar forms and prohibit all changes.
 
 
 9
 The record is devoid of any evidence reflecting any action, direct or indirect, by the State Bar of Texas suggesting adherence to the 10% attorney's fee provision; there is no basis for suggesting that the Bar association has engaged in price fixing, either mandatory or non-mandatory. Appellants have no standing to claim the redress they seek against the State Bar of Texas.
 
 
 10
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 Former Fifth Circuit case, Section 9(1) of Public Law 96-452 October 14, 1980
 
 
 [1]
 See Universal Brands, Inc. v. Philip Morris, 546 F.2d 30 (5th Cir. 1977)
 
 
 [2]
 See Jeffrey v. Southwestern Bell, 518 F.2d 1129, 1131 (5th Cir. 1975): "The 'target area' test arose as a means of limiting the class of potential treble-damage plaintiffs to those persons who could most adequately vindicate the purposes of the antitrust laws."