**C.A.R. LEASING, INC., a corporation, Plaintiff,**

v.

**FIRST LEASE, INC., a corporation, and the First National Bank of Chicago, a corporation, Defendants.**

**No. 73 C 2695.**

United States District Court, N. D. Illinois, E. D.

April 23, 1975.

**308**

Meyer H. Weinstein and Samuel E. Hirsch, Chicago, Ill., for plaintiff.

James A. Cherney, Joseph DuCoeur and Alan I. Becker, Kirkland & Ellis, Chicago, Ill., for defendants.

## DECISION

McMILLEN, District Judge.

Defendants have filed two motions which are intended to be dispositive of the complaint, and which the Court will grant. The first motion is for summary judgment on Count One, alleging a violation of the anti-trust laws of the United States. The second motion is to dismiss Count Two, which alleges a violation of the plaintiff's constitutional rights under the Fifth Amendment.

The motion for summary judgment on Count One is based on the fact that the plaintiff has produced no evidence of any anti-trust violation by either defendant. The defendants rely upon answers to interrogatories, depositions, and other documents under oath which show a lack of evidence to support the plaintiff's contentions in Count One. A motion for summary judgment is an appropriate method to resolve an anti-trust case, if the plaintiff cannot show sufficient evidence to create a genuine issue of material fact. First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); see also Kirk v. Home Indemity Co., 431 F.2d 554 (7th Cir. 1970).

To begin with, there is no evidence that the defendants have an existing monopoly in the car leasing business in any relevant market area. The defendant First Lease Inc. has only been in business since 1973 and leased not more than 744 vehicles in the State of Illinois in 1974. This was approximately 2% of all passenger cars leased in the counties of Cook, Lake, Will and DuPage during that year. During this period the plaintiff leased approximately 552 automobiles. It has only been able to identify two former customers who allegedly transferred their single car leases elsewhere.

Plaintiff contends in its memorandum, nevertheless, that the defendants are *attempting* to monopolize and that they will succeed if not prevented. Despite some authority to the contrary, we doubt that civil damages are recoverable for a mere attempt or intent to monopolize. 15 U.S.C. § 2 covers a criminal offense, and plaintiff is not seeking an injunction pursuant to 15 U.S.C. § 26. We fail to see what private rights are violated by an attempt, assuming plaintiff were to allege one. Assuming that such an offense were to exist and be alleged, however, an attempt to monopolize must be evidenced at least by the employment of practices which would, if successful, accomplish monopolization or which the defendant has the power to accomplish. See American Tobacco Co. v. United States, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946). Both the attempt and the fruition also apparently require a specific intent to monopolize. See Morning Pioneer, Inc. v. Bismarck Tribune Co., 493 F.2d 383, 386 (8th Cir. 1974).

The defendant's president has admitted that his company wishes to obtain as much business as it can but denies any intent to monopolize or any contracts or combinations in restraint of trade. His affidavit states that his company does not expect to obtain more than 10% of the automobile leasing business in the Chicago area in the foreseeable future. Although this self-serving statement cannot be given controlling weight, the objective facts concerning the amount of the plaintiff's business during its first full year of operation fail to show any reasonable probability of monopolization. Even 17.9% of the business in a relevant market does not constitute monopoly or a dominant position with the power to monopolize according to United States v. E. I. duPont de Nemours & Co., 351 U.S. 377, 399, 76 S.Ct. 994, 100 L.Ed. 1264 (1956).

■ The principal contention upon which the plaintiff apparently rests its complaint is that the leasing company and its parent, the First National Bank of Chicago, have the financial power to exclude competition. Plaintiff alleges, on information and belief, that First Lease Inc. can acquire unlimited funds from the First National Bank of Chicago without interest or finance charges, whereas the plaintiff must pay in excess of 10% for the financing which is necessary to operate an automobile leasing business. Contrary to these allegations, however, the president of First Lease Inc. states that his company paid 10.87% on its borrowed funds through August 31, 1974, whereas the president of the plaintiff corporation admitted that his company paid less than 10% a year in interest. Therefore, although the defendants might have the theoretical potential to finance an automobile leasing business without interest costs, there is no evidence they have done so or intend to do so. It would, of course, violate the bank's obligations to its stockholders, depositors, and Federal regulations to do so.

■ Plaintiff also contends that the defendants have reduced the rental charges for automobiles, or intend to do so. However, this is likewise unsupported by any facts in the record. The defendant's affidavit states that its charges are based upon costs and "the exigencies of the market place" and that it has not reduced prices in order to exclude competition. There is no evidence in the record concerning the rental charges of either party or of their many competitors, and the deposition of the plaintiff's president admits that the cost of leasing from the plaintiff and the defendant First Lease Inc. is substantially the same (Metnick deposition pp. 196–201 and 457–59).

■ A final requirement of an antitrust violation is damage to the plaintiff's business. Although it identified two customers allegedly lost to the defendants, the causation for this minimal damage, if any, has not been shown. Furthermore, the plaintiff seems to concede that it has sustained no damages up to the present but that it fears a possibility that this may occur in the future (Metnick deposition p. 204). It also has admitted that no leasing companies have been forced out of business by the defendants' activities, although there are apparently 100 such businesses in the relevant market area and they are constantly entering and leaving the business (Metnick deposition p. 468–9). The absence of damage is an additional ground for granting the defendants' motion for summary judgment. See *Kearney & Trecker Corp. v. Giddings & Lewis, Inc.*, 452 F.2d 579, 599–600 (7th Cir. 1971); c.d. 405 U.S. 1066, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972).

■ It is not uncommon for a conspiracy to exist between related corporate entities, such as the defendants. See *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc.*, 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951). The charge of preferential or non-existent charges between the two defendants is wholly unsupported by any evidence, however, and this is the only type of conspiracy which seems to be charged. Therefore, there is a complete lack of any evidence of a conspiracy, a combination, or an intent to monopolize, within the meaning of the Federal statutes relied upon by the plaintiff.

Turning to the motion to dismiss Count Two, it is difficult to understand plaintiff's theory on this count. It realleges the same facts and circumstances as in Count One and claims a "violation of the Fifth Amendment of the United States Constitution", also citing 12 U.S. C. § 1843. The statutory citation is not applicable to the defendant First National Bank of Chicago, since it is not a bank holding company as defined in § 1841(a). However, 12 U.S.C. § 24 does define the proper scope of activities of a national bank, and we will assume that this is the statute which the plaintiff's attorney intended to cite.

■ The Comptroller of Currency regulates national banks and their activities under the foregoing § 24 and may permit an operating subsidiary to perform "any business function which the parent bank is permitted to perform". 12 C.F.R. § 7.7376(b). If plaintiff is seeking an injunction against an allegedly *ultra vires* act of the defendant First National Bank, it may have a justiciable complaint. See e. g., Arnold Tours, Inc. v. Camp, 472 F.2d 427 (1st Cir. 1972). However, plaintiff has not clearly and concisely alleged such a cause of action and has not joined the Comptroller of the Currency as a defendant. Plaintiff's prayer seems to be primarily directed toward recovering damages for an alleged deprivation of property without due process rather than a declaratory judgment against a regulation or certificate promulgated by the Comptroller.

■ Assuming that the plaintiff is complaining about deprivation of its civil rights under 42 U.S.C. § 1983 by virtue of a violation of 12 U.S.C. § 24, we fail to see how this is supported by the Fifth Amendment to the Constitution of the United States. The mere fact that national banking associations are regulated by the Federal government does not make them subject to civil rights actions. Moose Lodge No. 107 v. Irvis, et al., 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); Jackson v. Metropolitan Edison Co., 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). We cannot see any invidious discrimination or arbitrary classification resulting from the actions of the defendants or of the Comptroller in this case as it now stands. See Johnson v. Robison, 415 U.S. 361, 381–3, 94 S.Ct. 1160, 39 L.Ed. 2d 389 (1974).

Therefore, if the plaintiff does intend to allege any violation of the Fifth Amendment or of the Federal Bank Act, it will have to do so more specifically than has been done so far in Count Two. Furthermore if plaintiff seeks an injunction under Count One pursuant to 15 U.S.C. § 26, this should be pleaded also.

It is therefore ordered, adjudged and decreed that the defendants' motion for summary judgment on Count One and their motion to dismiss Count Two are granted.