**James R. HARSH, Plaintiff,**

v.

**CPC INTERNATIONAL, INC., et al.,**
**Defendants.**

**Civ. A. No. CA-2-75-41.**

United States District Court,
N. D. Texas,
Amarillo Division.

June 4, 1975.

Joseph L. Alioto, Law Offices of Joseph L. Alioto, San Francisco, Cal., James W. Witherspoon, Witherspoon, Aikin, Langley, Woods & Gulley, Hereford, Tex., for plaintiff.

Robert J. Malinak and Theodore F. Weiss, Jr., Baker & Botts, Houston, Tex., Jerone W. Johnson, Underwood, Wilson, Sutton, Berry, Stein & Johnson, Amarillo, Tex., Thomas W. Johnston, Chadwell, Kayser, Ruggles, McGee, Hastings & McKinney, Chicago, Ill., Jay T. Holmes, Decatur, Ill., James E. Hastings, Chicago, Ill., Don H. Reavis, Culton, Morgan, Britain & White, Amarillo, Tex., Shidler, McBroom, Gates & Baldwin by James R. Irvin, Seattle, Wash., S. Tom Morris, Gibson, Ochsner, Adkins, Harlan & Hankins, Amarillo, Tex., Debevoise, Plimpton, Lyons & Gates, New York City, Robert H. Smith, Sanders, Saunders, Brian, Finney & Thomas, Amarillo, Tex., Mayer, Brown & Platt, Chicago, Ill., Richard E. Stokes, Jr., Stokes, Carnahan & Fields, Amarillo, Tex., Charles J. Calderini, Winston & Strawn, Chicago, Ill., A. J. Robinson, Robinson, Fotheringham & Simpson, Amarillo, Tex., Hall, McNicol, Marett & Hamilton, New York City, John C. Chambers, Stone, Stone & Chambers, Amarillo, Tex., Patrick E. Higginbotham, Coke & Coke, Dallas, Tex., George Whittenburg, the Whittenburg Law Offices, Amarillo, Tex., C.

Henry Fraes, Jr., New York City, Raymond A. Cook and Edith H. Jones, Andrews, Kurth, Campbell & Jones, Houston, Tex., for defendants.

## MEMORANDUM

WOODWARD, District Judge.

The plaintiff is James R. Harsh, a citizen of Texas, who has filed his complaint in this court against the above named defendants praying for relief, both equitable and in the form of damages, against the defendants because of their alleged violations of the antitrust laws of the United States, to-wit: Sections 4, 12, and 16 of the Clayton Act (15 U.S.C. §§ 15, 22, and 26) and Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2), and Section 2 of the Clayton Act as amended by Section 1 of the Robinson-Patman Act (15 U.S.C. § 13).

Some of the defendants have heretofore been dismissed upon joint motion of the plaintiff and those particular defendants, but the remaining defendants have filed their motions pursuant to Rule 12(b) of the Federal Rules of Civil Procedure that the above captioned complaint be dismissed for failure to state a claim upon which relief can be granted on the ground that plaintiff lacks standing to sue under the federal antitrust laws.

A hearing was held on said motions in Lubbock, Texas, on the 27th day of May, 1975 with counsel for the parties presenting their oral argument to the court. After considering such arguments, the pleadings of the parties, the motions of the parties, together with briefs in support of and in opposition to such motions, the court files this memorandum in support of its Judgment of Dismissal this day entered granting such motions and dismissing the plaintiff's cause of action.

Consideration of a Rule 12(b) motion is limited to the pleadings of the plaintiff and it must be plain that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief under said pleadings. It is only when "some insuperable bar to relief" is obvious from the face of the complaint that dismissal is proper. Battle v. Liberty National Life Insurance Company, 493 F.2d 39 (5th Cir. 1974).

The cause of action asserted in the complaint has been assigned by Dimmitt Management Company, hereinafter referred to as "Dimaco," to James R. Harsh, the plaintiff in this case. (Para. 41.).[1] In this memorandum the term "plaintiff" will be used as referring to the position of Dimaco and of course to the plaintiff himself by virtue of the above assignment.

In Paragraph 3 it is alleged that Dimaco was organized at the suggestion of The Bank of Cooperatives of Houston, Texas and of another entity, now known as Dimmitt Agri Industries, Inc., and that Dimaco was a small business management corporation organized for the purpose of entering into an operating contract with Dimmitt Agri Industries, Inc., hereinafter referred to as "Dimmitt" which was a farmers' cooperative. Dimmitt was to engage in the business of wet milling cornstarch, corn syrups and corn by-products and in the production and sales thereof. Dimaco entered into such management contract on July 1, 1968, for a term of 12 years, and Dimaco was to receive 12½¢ per bushel for all corn ground in the milling plant and in addition was to be paid 5% of all net profits made by Dimmitt in the conduct of its business. (Para 3.).

In succeeding paragraphs of the complaint, the plaintiff alleges that the defendants and others committed certain acts in violation of the above antitrust laws. These allegations contained in various paragraphs of the complaint allege that Dimmitt began its operation by constructing the plant in question (Para. 29.); that the price of cornstarch and corn syrup was artifically reduced by the defendants (Para. 30.); that

---

1. These references are to the paragraphs of the plaintiff's complaint.

Dimmitt was forced to liquidate and sell its plant (Para. 32.); that Dimmitt suffered excessive losses because of the monopolistic acts of the defendants (Para. 33.); that Dimmitt was forced to sell its land and liquidate and cease its business (Para. 34.); that Dimmitt suffered additional loss in the diminution in value of its going grain elevator and grain storage business, and lost confidence of customers (Para. 35.); and that all such damages to Dimmitt were the direct and proximate result of the acts of the defendants (Para. 36.). Similar allegations are contained in Paragraphs 37 and 38 as to the loss suffered by Dimmitt. The allegations in the above paragraphs concern the loss suffered by Dimmitt (not the plaintiff in this case) because of the alleged illegal acts of the defendants.

In Paragraph 39 it is alleged that Dimaco (the predecessor in interest to the plaintiff in this case) did all within its power to prevent such losses but that the economic pressure was so great that Dimmitt was prevented from entering into competition with defendants in this business. Further, it is alleged that the defendants, in forcing the cooperative out of business, also destroyed the contract of Dimaco with Dimmitt and that the contract became valueless (Para. 40.).

It is also alleged that the defendants conspired and determined to discriminate against Dimmitt by reducing the price of starch in the market place and to injure and keep Dimmitt from making a profit and to see that Dimmitt lost money (Para. 44.).

It is also alleged in Paragraph 45, in a conclusionary fashion, that the actions of the defendants were likewise directed against Dimaco "as an employee and operator of such cooperative."

Later, plaintiff alleges that the management company, Dimaco, has sustained damages as a direct and proximate result of the unlawful conduct above alleged.

The United States Supreme Court in Perkins v. Standard Oil Company, 395 U.S. 642, at p. 649, 89 S.Ct. 1871, at p. 1875, 23 L.Ed.2d 599 (1968), states and quotes with approval a court of appeals case that "the rule is that one who is only *incidentally* injured by a violation of the antitrust laws—the bystander who was hit but not aimed at,—cannot recover against the violator." It appears that the thrust of plaintiff's allegations in this case and the allegations specifically referred to above show that it was Dimmitt who was "aimed at," and although Dimaco was hit, it was only incidental and the plaintiff here is not the principal victim nor was the plaintiff here directly injured so as to entitle plaintiff to bring this suit.

Several Circuit Courts as well as the United States Supreme Court have addressed themselves to the question of the standing of a party to bring antitrust actions similar to the one in this case. These decisions are particularly helpful in their holdings as to the type of persons or parties who are not entitled to such standing. For example, a state cannot sue *for loss to the general economy of the state* in an antitrust action (Hawaii v. Standard Oil Company of California, 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1971); a lessor who is entitled to a percentage of the gross receipts has no standing to complain of an antitrust violation in which his lessee was the target (Calderone Enterprises Corporation v. United Artists Theatre Circuit, 454 F.2d 1292 (2d Cir. 1971); an employee who is discharged when his employer is merged in an action which violates the antitrust laws has no standing to sue under the antitrust laws (Reibert v. Atlantic Richfield Company, 471 F.2d 727 (10th Cir. 1973); a licensor granting to his licensee an exclusive franchise is not entitled to standing when the licensee is a victim of an illegal antitrust violation (Productive Inventions, Inc. v. Trico Products Corporation, 224 F.2d 678 (2d Cir. 1955)).

In Reibert v. Atlantic Richfield Company, *supra*, the court denied standing to an employee who lost his job because of an antitrust violation against his employer; first, because his job was not a commercial venture or enterprise, and, secondly, because the antitrust acts were not directed at the injured employee. Some Circuits have concerned themselves with the directness of the injury and others have required that the plaintiff come within the "target" of the alleged antitrust violation. The Fifth Circuit has addressed itself also to this question.

In 1957 the Fifth Circuit handed down its decision in Martens v. Barrett, 245 F.2d 844, in an opinion which has subsequently been followed and quoted with approval by later opinions of this Circuit. In *Martens* it was held:

"And it is universal that where the business or property allegedly interfered with by forbidden practices is that being done and carried on by a corporation, it is that corporation alone, and not its stockholders (few or many), officers, directors, creditors or licensors, who has a right of recovery, even though in an economic sense real harm may well be sustained as the impact of such wrongful acts bring about reduced earnings, lower salaries, bonuses, injury to general business reputation, or diminution in the value of ownership."

The Fifth Circuit in Mendenhall v. Fleming Company, Inc., 504 F.2d 879 (1974), reaffirmed Martens v. Barrett, *supra,* and held in that case that lessors had no standing to sue and that a stockholder could not recover for personal loss.

Although plaintiff here has suffered economic loss, he cannot recover in this case under the rule established by the Fifth Circuit in *Martens*. As a management corporation the plaintiff's predecessor in interest was nothing more than an officer or principal director of the management of Dimmitt, who was the target of the alleged antitrust violations as alleged by plaintiff, and even though

plaintiff was to receive a portion of the profits and the remuneration was based on the amount of business, plaintiff still performed the duties of an officer or perhaps a director of the corporation. The injury to plaintiff in this case was not direct, the allegations plainly show that the alleged antitrust violations were aimed at Dimmitt and that the target was the wet mill cornstarch and corn syrup business and not the management function performed by plaintiff's predecessor under its contract with Dimmitt.

In oral argument, counsel for plaintiff stated that plaintiff's position was founded upon the Fifth Circuit decision in Dailey v. Quality School Plan, Inc., 380 F.2d 484 (5th Cir. 1967). Here the court permitted standing to a commissioned sales agent who had developed a territory of his own and as a result of a subsequent illegal merger his territory and job were abolished. But in that case the court found that the injury to the plaintiff was direct and not a mere incidental result of the illegal acquisition. The position of a commissioned sales agent, who has his own sales territory and business, was distinguished by the court from those cases where the business or property injured is that of the corporation, in which case the claim asserted by an employee would be derivative.

*Dailey* was cited in Battle v. Liberty National Life Insurance Company, *supra,* and the court held that in this (5th Circuit) the plaintiff is required to show that he is "within the sector of the economy in which the violation threatened a breakdown of the competitive conditions." Here the plaintiff was not within that sector of the economy as the plaintiff was not in the business of wet milling of cornstarch and corn syrups but was merely the manager, officer or director of a corporation that was in that sector of the economy. As alleged in plaintiff's complaint, Dimaco was a management corporation and was organized for those purposes. It stands in exactly the same position as the presi-

dent of a corporation who is the managing or executive officer of the corporation. Like the economic loss suffered by an employee or officer, the loss suffered by Dimaco and plaintiff in this case was derivative and does not meet the test of *Battle*.

Further, it does not appear to the court in this case that Dimaco was a commercial venture or enterprise that would give standing to the plaintiff. Reibert v. Atlantic Richfield, *supra*, at p. 730, states that to have a commercial venture or enterprise to afford standing, the plaintiff must be operating out of a specific market place and that it would be necessary that the plaintiff establish a clientele. Such was not the case here and in the language of *Reibert* Dimaco could not be construed as having a venture or enterprise within the market area endangered by the merger.

The court has been unable to find any authority that would grant standing to the plaintiff or plaintiff's predecessor in this case. To the contrary, the above cited decisions, although not construing the precise factual situation alleged in this case, are persuasive reasoning that plaintiff has no standing here. The alleged antitrust violations were aimed at Dimmitt and its wet mill cornstarch and corn syrup operations, not at the management thereof, and not only was the injury to plaintiff indirect, Dimaco's function as management were not within the target or economic area required. Dimaco's position is more likened to that of an officer or a director whose injury or claim is derivative of the injured corporation rather than that of a commissioned sales agent and the court finds that defendants' motions should be granted and plaintiff's cause of action dismissed.

Counsel for at least one of the defendants has notified the court that he has no objection to the entry of an order of dismissal without prejudice to the plaintiff's right to amend within a reasonable period, provided that the amendment would allege facts to show that the plaintiff had standing in a position other than based upon a claim which is derivative.

An order will be entered accordingly.

The Clerk will furnish a copy hereof to each attorney.