**HYDRO–TECH CORPORATION, a Colorado corporation, and Hasan F. Onal, Plaintiffs-Appellants,**

v.

**SUNDSTRAND CORPORATION, a Delaware corporation, Defendant-Appellee.**

No. 80–1409.

United States Court of Appeals, Tenth Circuit.

April 2, 1982.

John F. Head, Denver, Colo. (Teryl R. Gorrell, Denver, Colo., with him on the brief), of Head, Moye, Carver & Ray, Denver, Colo., for plaintiffs-appellants.

David M. Ebel, Denver, Colo. (Robert H. Harry and Glenn W. Merrick, Denver, Colo., with him on the brief), of Davis, Graham & Stubbs, Denver, Colo., for defendant-appellee.

Before SETH, Chief Judge, and McWILLIAMS and PECK,* Circuit Judges.

---

* Honorable John W. Peck, United States Circuit Judge, Sixth Circuit, sitting by designation.

1. Although the complaint mentioned Section 1 et seq. of the Sherman Act, 15 U.S.C. § 1 et seq., Hydro-Tech failed to urge the validity of any Section 1 claim before the district court nor does it do so now on appeal. As the district court noted, Section 1 requires a "con-

McWILLIAMS, Circuit Judge.

██ The issue in this appeal is whether a lawsuit, brought without probable cause and for an anticompetitive purpose, can form the basis for a claim under the antitrust laws of the United States. In resolving this matter, we have undertaken a balancing of the first amendment right to petition the courts against the interests to be protected under the antitrust laws. For the reasons set forth below, we conclude that the prosecution of a lawsuit, albeit without probable cause and for an anticompetitive purpose, is activity protected by the first amendment and therefore immune from attack under the antitrust laws.

Hydro-Tech, a Colorado corporation, and one of its employees, Hasan F. Onal, brought an antitrust action in the United States District Court for the District of Colorado against Sundstrand, a Delaware corporation doing business in Colorado. Hydro-Tech's complaint set forth two claims for relief. The first claim for relief was based upon alleged violations of the Sherman Act, 15 U.S.C. §§ 1, 2 (1976), and Hydro-Tech sought treble damages pursuant to 15 U.S.C. § 15 (1976).[1] Jurisdiction was based on 15 U.S.C. § 15 (1976) and 28 U.S.C. § 1337 (1976). The second claim for relief was based upon alleged violations of Colorado laws relating to malicious prosecution and abuse of process, jurisdiction for such claim existing by virtue of the doctrine of pendent jurisdiction. As indicated, the gravamen of the instant complaint was that the defendant Sundstrand had violated these federal and state laws by previously prosecuting a civil lawsuit against Hydro-Tech and Onal, which lawsuit was allegedly filed without probable cause and for an anticompetitive purpose.

Pursuant to Fed.R.Civ.P. 12(b)(6), Sundstrand, the defendant, filed a motion to dis-

tract, combination ... or conspiracy" in restraint of trade. Nowhere in its complaint did Hydro-Tech allege any such agreement between Sundstrand and any other party. Accordingly, any allegation of a Section 1 violation is without merit and we need not discuss it further.

miss the antitrust claim on the ground that it failed to state a claim upon which relief could be granted. After extensive briefing, the district court granted the defendant's motion to dismiss the antitrust claim, and then, in accord with such dismissal, dismissed the second claim, based on Colorado laws relating to malicious prosecution and abuse of process, for lack of federal jurisdiction.[2] Judgment dismissing Hydro-Tech's complaint and causes of action was duly entered and it is from such judgment that Hydro-Tech appeals. We affirm, although our approach to the matter is somewhat different from that taken by the district court.

### I. The Prior Litigation

From the allegations contained in the first claim for relief, we learn the following: Sundstrand has been involved in the centrifugal pump business since about 1960, a centrifugal pump being defined as a pump having an impeller turning in excess of 7,200 rounds per minute. Hasan F. Onal, one of the two antitrust plaintiffs, for a considerable number of years has been a designer of centrifugal pumps. Onal formed a company known as Hydro Jet, for which he designed and built several technologically-advanced centrifugal pumps.

In 1974, Sundstrand purchased the assets, including patents and patent applications, of Hydro Jet, and employed Onal under a written employment contract. In October, 1975, Onal terminated his employment with Sundstrand and began working as a part-time consultant with Worthington Pump, Inc. At about the same time, Onal formed a new corporation known as Hydro-Tech, which was formed for the purpose of developing, manufacturing, and marketing pumps designed by Onal, who, after forming Hydro-Tech, accepted employment with it. Notwithstanding his departure from Sundstrand, Onal entered into a consulting agreement with Sundstrand wherein he agreed to provide his former employer with consulting services over a three-year period. That contract has since been terminated.

After incorporating Hydro-Tech, Onal, as an employee of that company, designed two pumps, the HT 4682 and the Hyperflow. In January, 1978, the Husky Oil Company made a request to a number of pump manufacturers, including Sundstrand and Hydro-Tech, for bids on a petro-chemical pump. In response to such request, Hydro-Tech submitted the Hyperflow pump to Husky Oil. Sundstrand, and six other pump companies, also submitted bids, but Hydro-Tech was awarded the contract. The HT 4682 pump was designed to meet the specifications of Republic Geothermal. Republic Geothermal cancelled its order, however, and Hydro-Tech sought to develop other customers for the HT 4682 pump. As a part of its promotion efforts, Hydro-Tech printed a brochure that was distributed industry-wide. Sundstrand protested to Hydro-Tech about the distribution of the brochure, claiming that Hydro-Tech, in promoting its new pump, was infringing on patents owned by Sundstrand. Hydro-Tech responded to such protest by denying that there was any infringement.

In October, 1978, Sundstrand commenced a diversity action in the United States District Court for the District of Colorado against Hydro-Tech and Onal, alleging misappropriation of trade secrets, confidential information, and "know how" in breach of contractual and fiduciary obligations, and asserting that such action constituted unfair competition. That case was tried to the Honorable Sherman G. Finesilver, Judge of the United States District Court for the District of Colorado. A copy of Judge Finesilver's memorandum opinion and order was attached to Hydro-Tech's complaint. Judge Finesilver, in the misappropriation of trade secrets case, the prosecution of which forms the basis for the

**2.** We are asked here to review an order of the district court granting a Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. In such circumstance, the material allegations in the complaint are deemed to be true and the complaint properly is dismissed only if it appears that the allegations are insufficient as a matter of law to state a claim that would entitle the pleader to relief. *Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848-49, 23 L.Ed.2d 404 (1969).

present antitrust action, generally found for Hydro-Tech and Onal, although he did find that Onal was guilty of a technical breach of a covenant not to compete and, further, he ordered Hydro-Tech to return certain documents to Sundstrand. Although the judge held that Sundstrand was not entitled to any injunctive relief, he did retain jurisdiction of the entire matter to consider at some future date whether Sundstrand was entitled to any money damages and to consider Hydro-Tech's counter claim.[3]

## II. The Present Antitrust Action

Hydro-Tech bases its present antitrust claim against Sundstrand on the action previously brought by Sundstrand against Hydro-Tech for misappropriation of trade secrets. In its first claim for relief in the present case, Hydro-Tech alleged that Sundstrand instituted the earlier action between the parties for the purpose of eliminating competition and perpetuating Sundstrand's monopoly in the centrifugal pump business, and that the earlier action was instituted "without probable cause."

Concerning damages, Hydro-Tech alleged that it had expended the sum of $37,547.13 in defending the earlier action brought against it by Sundstrand, and also that as a result of the earlier action, it had been forced out of business and that Onal had been compelled to find other employment. Accordingly, Hydro-Tech and Onal each asked for actual damages in the sum of $10,000,000, which sum should be trebled, and they also sought punitive damages in the sum of $10,000,000.

The district judge in the antitrust case, by coincidence or otherwise, was Judge Finesilver, the judge who heard the earlier misappropriation of trade secrets suit brought by Sundstrand against Hydro-Tech.

Be that as it may, the trial judge in the present proceeding dismissed Hydro-Tech's first claim on the ground that it failed to state a claim upon which relief could be granted. More specifically, in his memorandum opinion the trial judge held that Sundstrand's misappropriation of trade secrets action against Hydro-Tech could *not* form the basis for an antitrust action by Hydro-Tech against Sundstrand, citing *Eastern R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); and *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977). We note that these cases set forth the general rule, known as the *Noerr-Pennington* doctrine, that attempts to influence the government, including petitions to the courts, are exempt from attack under the Sherman Act.

Recognizing that *Noerr-Pennington*, and their progeny also enunciated a so-called "sham exception" to the general rule, the district judge expressed doubt that the allegations in the first claim of Hydro-Tech's complaint were sufficient to bring it within the sham exception, citing *Semke v. Enid Auto. Dealers Ass'n*, 456 F.2d 1361, 1366-67 (10th Cir. 1972), where we indicated that the term "sham" connoted "fraud, corruption or misuse of the state processes." The trial judge, however, went on to hold, and we believe this to be his real holding, that, even granting that Sundstrand's earlier lawsuit against Hydro-Tech was a sham, a *single* sham suit of this nature could *not* form the basis for Hydro-Tech's antitrust claim against Sundstrand.[4]

**3.** The case was bifurcated, with the issue of liability tried first and with the counterclaim and damages issues reserved for later disposition. Hydro-Tech's counterclaim was for attorneys' fees incurred in defending Sundstrand's misappropriation of trade secrets case. After the resolution of the liability issue, and prior to the second phase of the trial concerning damages and the counterclaim, the case was dis-

missed without prejudice pursuant to stipulation of all of the parties. The settlement between the parties is not part of the record on appeal.

**4.** There is some dispute over whether the district court improperly transformed the motion to dismiss into a motion for summary judgment without notice to the parties, as required by Fed.R.Civ.P. 56, by taking judicial cognizance

In this Court, Hydro-Tech argues that: (1) "a single sham lawsuit brought for the purpose of directly interfering with the business of a competitor is actionable under the Sherman Act"; and (2) "a suit brought without probable cause and for the purpose of directly interfering with the business of a competitor meets the requirements for the sham exception." We shall consider the latter matter first.

Although it is not dispositive of the matter, we do note that nowhere in the entire complaint did Hydro-Tech allege that Sundstrand's earlier action against Hydro-Tech was a "sham." Indeed, the recitals in the complaint of the protracted business dealings between Onal and Sundstrand tend themselves to negate the proposition that Sundstrand's suit against Hydro-Tech and Onal was a sham. Be that as it may, Hydro-Tech's position in this Court is that the allegations in its antitrust claim, that the earlier misappropriation of trade secrets action was instituted "without probable cause" and with an anti-competitive purpose and intent, are sufficient to bring the instant case within the "sham exception" to the *Noerr-Pennington* rule of antitrust immunity. We think not.

The mere fact that Sundstrand may have instituted its prior action against Hydro-Tech with an anti-competitive intent, i.e., with an intent to gain a business advantage over Hydro-Tech, does not, of itself, bring Hydro-Tech's first claim for relief within the "sham exception" to the *Noerr-Pennington* doctrine. This principle was established in both *Noerr* and *Pennington*. In *Noerr*, the Court held that the railroads' publicity campaign was immune from antitrust liability even though the trial court

had found that its sole purpose was anti-competitive. The Court found the "sham exception" inapplicable because the railroads "were making a genuine effort to influence legislation and law enforcement practices." 365 U.S. at 144, 81 S.Ct. at 533. Likewise, in *Pennington*, the Court held that petitioning activity is protected "regardless of intent or purpose." 381 U.S. at 670, 85 S.Ct. at 1593.

It cannot be said, therefore, that the filing of a lawsuit is transformed into a "sham" merely because the primary intent of the lawsuit's instigator is to do harm to the business of a competitor. To reiterate, "the sham exception . . . is limited to situations where the defendant is not seeking official action by a governmental body, so that the activities complained of are 'nothing more' than an attempt to interfere with the business relationships of a competitor." *Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Bd. of Culinary Workers*, 542 F.2d 1076, 1081 (9th Cir. 1976), *cert. denied*, 430 U.S. 940, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977).

Our particular inquiry thus narrows to the question of whether the allegation in the instant complaint, that Sundstrand initiated its earlier action against Hydro-Tech "without probable cause," is sufficient to bring the claim within the "sham exception."

Hydro-Tech, in its first claim for relief, did not allege a pattern of baseless actions by Sundstrand, nor did it allege bribery, perjury, denial of access to the courts, or the like, as those several matters are referred to in *California Motor Transport*.

---

of both the opinion and the record in the prior misappropriation of trade secrets case. By reply brief, and again at oral argument, the appellants charged that the district court went beyond the pleadings and determined, as a matter of *fact*, that the first lawsuit was filed by Sundstrand *with probable cause*. In support of this claim, appellants pointed to the district court's statement that Sundstrand's success in the prior suit was "entitled to considerable weight in determining whether that prior lawsuit can, by itself, serve as a basis of an antitrust claim."

We do not agree with the appellants' reading of the district court's opinion. The lower court's reference to Sundstrand's partial success in the prior suit was not a determining factor in the granting of the motion to dismiss. It is our understanding that the district court based its decision upon the conclusion that a *single* lawsuit, whether filed with probable cause or without probable cause, cannot serve to form the basis of a claim for relief under the Sherman Act.

Rather, it is Hydro-Tech's position here that a mere absence of probable cause on the part of Sundstrand in instituting the misappropriation of trade secrets action against Hydro-Tech is sufficient to bring the present case within the "sham exception" to the *Noerr-Pennington* rule. We do not agree.

In *California Motor Transport,* the United States Supreme Court applied the "sham exception" to litigation activities where there was a pattern of baseless, repetitive claims and where the litigation resulted in barring competitors from meaningful access to adjudicatory tribunals. 404 U.S. 508, 509–16, 92 S.Ct. 609, 611–14, 30 L.Ed.2d 642 (1972). Although we do not believe that these two requirements are necessarily the *sine qua non* for application of the "sham exception" to litigation activities, the Supreme Court has not yet decided whether litigation activity in the context of one lawsuit, filed without probable cause, is conduct subject to the "sham exception."

The question of the applicability of the "sham exception" to a single lawsuit was considered by some members of the Court in *Vendo Co. v. Lektro-Vend Corp.,* 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977).[5]

In analyzing this decision, several courts have concluded that a majority of the Court would hold that one vexatious or baseless suit would be sufficient to state a cause of action under the Sherman Act. *E.g., Technicon Medical Information Sys. Corp. v. Green Bay Packaging, Inc.,* 480 F.Supp. 124, 127–28 (E.D.Wis.1979); *Colorado Petroleum Marketers Ass'n v. Southland Corp.,* 476 F.Supp. 373, 378 (D.Colo.1979); *Cyborg Sys. Inc. v. Management Science America, Inc.,* 1978–1 Trade Cas. ¶ 61,927 (N.D.Ill.1978).

In our view, *Vendo* did not address the specific issue with which we are confronted. Although it can be said that some members of the Court indicated that the *quantity* of the lawsuits forming the basis of an antitrust claim should not be determinative, nothing was said about the *quality* of the lawsuit forming the basis of the antitrust claim. Nothing in *Vendo* causes us to alter our firm belief that *California Motor Transport* suggests that the term "sham" is something more than a mere "absence of probable cause."[6] As we previously noted in *Semke v. Enid Auto. Dealers Ass'n,* 456 F.2d 1361, 1366–67 (10th Cir. 1972), the term "sham" means misuse or corruption of

---

**5.** In *Vendo,* a single state court case formed the basis of a subsequent antitrust claim in the federal court by the state court defendant against the state court plaintiff. The federal court in the antitrust action enjoined the state court plaintiff from collecting the judgment awarded to it by the state court.

The Supreme Court reversed in a decision that produced no majority opinion. The plurality opinion, announced by Justice Rehnquist and joined by Justices Stewart and Powell, was grounded upon the Anti-Injunction Act, 28 U.S.C. § 2283. 433 U.S. at 626, 97 S.Ct. at 2885. In a footnote, however, the plurality indicated that the filing of a single lawsuit might be sufficient to give rise to a cause of action within the "sham exception" to the *Noerr-Pennington* doctrine. 433 U.S. at 635–36 n.6, 97 S.Ct. at 2889–90 n.6.

Justice Blackmun, joined by the Chief Justice, filed a concurring opinion in which he stated that one lawsuit probably is not sufficient to give rise to an action under the antitrust laws. 433 U.S. at 643, 644 n.*, 97 S.Ct. at 2893, 2894 n.*.

A dissenting opinion written by Justice Stevens, in which Justices Brennan, White and Marshall joined, took the position that a single

lawsuit could violate the antitrust laws and rejected any reading of *California Motor Transport* to require a pattern of repetitive suits. 433 U.S. at 645, 661–62, 97 S.Ct. at 2894, 2902–03.

**6.** In *California Motor Transport,* the Court outlined types of abuses of the judicial process which would give rise to a cause of action under the antitrust laws. The Court mentioned perjury, use of a patent obtained by fraud to exclude a competitor from the market, bribery, conspiracy with a licensing official, and "a pattern of baseless, repetitive claims" as examples of such abuses. 404 U.S. at 512–13, 92 S.Ct. 612–13. We believe that while these activities are only examples of the types of activities not protected by the first amendment, and, therefore, do not comprise an exclusive list, the listing thereof evidences the Court's intent to require some *abuse* of the judicial process as a prerequisite to prosecution under the antitrust laws. As indicated, we do not believe that the filing of a lawsuit, albeit without probable cause and with an anticompetitive intent, rises to the category of an abuse of the judicial process.

the judicial process.[7] The filing of a lawsuit "without probable cause" and with an anticompetitive intent simply does not come up to this standard set by the Supreme Court in *California Motor Transport*.

In its brief in this Court, Hydro-Tech asserts that Sundstrand's misappropriation of trade secrets action was brought "with knowledge that its claims were spurious." We find no such allegation in Hydro-Tech's complaint in the instant case. To us, such terms as "vexatious" and "spurious" are much more onerous than "without probable cause." We are disinclined to hold that merely by bringing an action without probable cause, such determination to be made, of course, on a hindsight basis, the instigator of such action renders itself open to the maintenance of an antitrust suit seeking treble damages. We believe the *Noerr-Pennington* rule of antitrust immunity, as applied in *California Motor Transport*, supports our holding.

■ In short, Hydro-Tech's pleadings are inadequate to state a cause of action under the antitrust laws. The facts set forth in the complaint, taken as true, do not support a conclusion that Sundstrand's prior lawsuit constituted a sham.[8] A *sham* action is one which tends to be abusive of the judicial processes and, therefore, is something more than an action instituted without probable cause.

Having determined that Hydro-Tech's first claim for relief is insufficient to bring the present case within the "sham exception" to the *Noerr-Pennington* rule, we need not address ourselves here to the further question as to whether a *single* sham lawsuit is sufficient basis for a subsequent antitrust action against the instigator of the sham.

Judgment affirmed.

**7.** Other courts are in accord with our interpretation of *California Motor Transport*. *See, e.g., Ad Visor, Inc. v. Pacific Tel. and Tel. Co.*, 640 F.2d 1107, 1109 (9th Cir. 1981) (holding that the key to the "sham exception" is an improper interference with administrative or judicial processes); *Miracle Mile Assoc. v. City of Rochester*, 617 F.2d 18, 21 (2d Cir. 1980) (holding that access-barring is the cornerstone to the "sham exception"); *First Nat'l Bank of Omaha v. Marquette Nat'l Bank of Minneapolis*, 482 F.Supp. 514, 520–21 (D.Minn.1979), *aff'd*, 636 F.2d 195 (8th Cir. 1980), *cert. denied*, 450 U.S. 1042, 101 S.Ct. 1761, 68 L.Ed.2d 240 (1981) (finding that the institution of a single lawsuit does not give rise to a cause of action under the antitrust laws absent allegations that the lawsuit involves ethical misconduct similar to the abuses described in *California Motor Transport*).

**8.** In so holding, we recognize that dismissal of a complaint under Fed.R.Civ.P. 12(b)(6) normally is proper only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). But this is not an ordinary case. This case involves a plaintiff seeking damages for conduct which is *prima facie* protected by the first amendment. "[T]he danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required." *Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Bd. of Culinary Workers*, 542 F.2d 1076, 1083 (9th Cir. 1976), *cert. denied*, 430 U.S. 940, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977).

To paraphrase the *Franchise Realty* court, we must consider whether a competitor, knowing that its prosecution of a lawsuit against a competitor might result in expensive and burdensome antitrust litigation, which would drag on through the discovery stage at least, would not thereby feel pressured to forego the exercise of its first amendment right to petition the courts. When the discovery burdens of antitrust cases are combined with the threat of treble damages, the prospect of defending an antitrust action can become a most potent weapon to deter the exercise of first amendment rights.

Recognizing the tenuousness of first amendment guarantees when confronted with harassing litigation, the Supreme Court has erected barriers to safeguard those guarantees. *See, e.g., New York Times Co. v. Sullivan*, 376 U.S. 254, 267–83, 84 S.Ct. 710, 719–27, 11 L.Ed.2d 686 (1964); *NAACP v. Button*, 371 U.S. 415, 431–33, 83 S.Ct. 328, 337–38, 9 L.Ed.2d 405 (1963). Finding that similar values are endangered when a complainant seeks treble damages in excess of $70,000,000 on the basis of a lawsuit filed for misappropriation of trade secrets and unfair competition, we hold that such an antitrust complaint must include allegations of the specific activities, not protected under the *Noerr-Pennington* doctrine, which complainant contends have resulted in an abuse of judicial processes. Hydro-Tech has failed to plead such allegations.