**WESTERN SYSTEMS, INC., et al., Plaintiffs,**

v.

**DYNATECH CORPORATION and Lyle Bergquist, Defendants.**

**Civ. A. No. 82–JM–906.**

United States District Court, D. Colorado.

May 8, 1985.

Lawrence R. Reno, Bader & Cox, Denver, Colo., for plaintiffs.

Arthur A. March and Robert E. Purcell, Rogers, Hoge & Hills, Englewood, Colo., for defendants.

## ORDER

JOHN P. MOORE, District Judge.

This matter is before me on defendants' motion for summary judgment on claims asserted by Western Systems, Inc. ("Western") and Thomas McCasland ("McCasland"), the only remaining plaintiffs in this anti-trust action. The issues have been fully briefed. Jurisdiction is proper under 28 U.S.C. § 1337.

This action was initiated by Western, McCasland, Hexco International, Inc. ("Hexco") and Hughes Capital Corporation ("Hughes") for declaratory relief and monetary damages for violations of 15 U.S.C. §§ 1 & 2, referred to herein as §§ 1 & 2 of the Sherman Act. Plaintiffs' seventh and eighth claims for relief invoke the court's pendent jurisdiction.[1] The complaint is filed pursuant to § 4 of the Clayton Act, 15 U.S.C. § 15, which permits the recovery of treble damages by "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the anti-trust laws ..."

A synopsis of the facts[2] reveals the gradual but continual attrition of this action since its initial filing in June 1982, shortly before defendants Dynatech, Inc. ("Dynatech") and Lyle Bergquist ("Bergquist") sought a hearing on their motion for a preliminary injunction in the state court. The market in question is that for helium sampling and analysis services, an admittedly limited but accepted technique in the oil and gas industry.[3]

In 1978, plaintiff Western, a Colorado corporation, whose President was McCasland, hired the defendant, Lyle Bergquist, an expert in helium sampling, to develop this market for the corporation. Late in 1981, when conflict arose between McCasland and Bergquist, the parties executed a Termination Agreement in which McCasland signed a two year world-wide covenant not to compete in the helium sampling business to be enforced by an injunction to restrain Western from engaging in a similar business. [See Exhibit A, plaintiffs' complaint].

In tandem with the McCasland-Bergquist transaction were the negotiations between plaintiffs and Dynatech for Dynatech to purchase the assets of Western. Upon the breakdown of these negotiations, Dynatech hired Bergquist who assigned his covenant not to compete to Dynatech. A week later, Hughes, a corporation in the business of buying up existing operations, purchased Western and set up a new corporation, Hexco, to continue in the helium sampling and analysis business. Dynatech, as assignee of Bergquist's covenant not to compete, then sought its enforcement in the state district court for Jefferson County. The state court denied injunctive relief along with a motion to stay, pending my resolution of the federal action.

In prior orders, defendants' motion to dismiss on the issue of whether plaintiffs had alleged an injury within the meaning of the anti-trust laws was denied. At that stage of discovery and pleading, the case was not ripe for a remedy. Upon a later submission of a stipulation of dismissal, plaintiffs Hughes and Hexco were dismissed without prejudice from the action. Only Western and McCasland remain to prosecute the anti-trust and pendent state claims.

Defendants' motion for summary judgment is premised on the contention that the remaining plaintiffs, Western and McCasland, lack standing to prosecute an anti-trust action. In a two pronged argument, defendants asseverate that plaintiffs' alleged anti-trust injury, the filing of the

1. Plaintiffs' 7th claim for relief is for tortious interference with contract; their 8th claim is for tortious interference with a prospective business advantage.

2. In my order of May 30, 1983, the facts were set forth up to that stage of the pleading and discovery.

3. Helium sampling analysis is utilized in locating geothermal resources, oil, natural gas and uranium deposits.

state court action with the consequent attorneys fees incurred, is not an injury cognizable under the anti-trust statute, and that McCasland, a former employee of the now-dismissed co-plaintiffs, and Western, an officially dissolved Colorado corporation, lack standing to invoke Sherman Act protection.

Plaintiffs respond that defendants' filing of the state action naming Western and McCasland, individually, sufficiently exposed them to liability flowing from the defendants' alleged anti-trust violation *i.e.* the enforcement of an illegal restraint of trade, to assure their standing in this action. Moreover, plaintiffs contend that its allegations concerning the state court action comply with the Tenth Circuit's requirements in *Hydro-Tech Corporation v. Sundstrand Corporation*, 673 F.2d 1171 (10th Cir.1982) and divest protection of that proceeding from the *Noerr-Pennington* Rule.[4]

█ Because summary procedures should be used sparingly in complex litigation, *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1964), "[t]he general standards for the granting of summary judgment become even more strict in the anti-trust context ..." *Calnetics Corp. v. Volkswagen of America, Inc.*, 532 F.2d 674 (9th Cir.1976). Nevertheless, defendant's burden is not insurmountable. Where plaintiff fails to present significant probative evidence to demonstrate that a genuine issue of material fact exists, summary judgment is appropriate. *Joe Regueira, Inc. v. American Distilling Co.*, 642 F.2d 826 (5th Cir.1981); *C.A.R. Leasing, Inc. v. First Lease, Inc.*, 394 F.Supp. 306 (N.D.Ill. 1975). When the gist of a case turns on documentary evidence and involves conclusions of law, summary judgment may be granted. *U.S. v. Beatrice Foods Co.*, 344 F.Supp. 104 (D.Minn.1972), *aff'd* 493 F.2d 1259 (8th Cir.1974), *cert. denied*, 420 U.S. 961, 95 S.Ct. 1350, 43 L.Ed.2d 438. Summary judgment is appropriate in anti-trust cases in which the plaintiff can offer only vague and conclusory charges. *Rodrigue v. Chrysler Corp.*, 421 F.Supp. 903 (D.La. 1976). Nevertheless, where motive and intent and a myriad of other factual issues may grow from the fertile grounds of an anti-trust allegation, summary judgment should be used with caution.

While § 4 of the Clayton Act seems to grant a private right of action to "any person" who can prove injury to his "business or property" caused by an anti-trust violation, the courts have imposed a standing requirement on the "by reason of" language to signify legal causation. *See* generally, Berger and Bernstein, "An Analytical Framework for Anti-Trust Standing," 86 Yale L.J. 809 (1977). Underlying judicial restraint of anti-trust standing is the concern that mandatory treble damages may exact a penalty not contemplated by the Congress in all cases, or, indeed, too speculative or remunerative under the circumstances.

█ In the most recent case, the Supreme Court comprehensively reviewed the doctrine of standing since its earlier enunciations in *Brunswick Corp. v. Pueblo Bowl-O-Mat*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977); *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977); and *Blue Shield of Virginia, Inc. v. McCready*, 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982), and further constricted the standing requirement. *Associated General Contractors of California v. California State Council*, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). Justice Stevens, in a comprehensive analysis of the statutory language and history, underscored the requisite showing the anti-trust plaintiff must make to enable a court "to evaluate the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them." *Id.* at 907 (footnote omitted). Among the factors favoring judicial recognition of an anti-

---

4. The *Noerr-Pennington* rule is a court-made doctrine that exempts certain attempts to influence the government, including the filing of court actions, from attack under the Sherman Act.

trust claim are a causal connection between the anti-trust violation and the harm to the plaintiff, the defendant's improper motive, the nature of the plaintiff's alleged injury, and the directness or indirectness of the injury. Reversing the Court of Appeals for the Ninth Circuit, the Court concluded that plaintiff Union's allegations of harm were insufficient as a matter of law to be cognizable under the Sherman Act. "Other relevant factors" fueled this decision: the *nature* of plaintiff's injury, the potential for duplicative recovery or complex apportionment of damages, and the existence of more direct victims of the alleged conspiracy. *Id.* at 913.

■ *Brunswick (supra.)* and its progeny delineate the seminal inquiry I must make to determine whether plaintiffs have standing to prosecute this lawsuit. "Plaintiffs must prove *anti-trust* injury of the type the anti-trust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *Brunswick* 429 U.S. at 490, 97 S.Ct. at 698. *See also, Central National Bank v. Rainbolt,* 720 F.2d 1183 (10th Cir.1983). Not just any injury, but *anti-trust injury* alone is the causal connection for § 4 Clayton jurisdiction.

■ To determine whether anti-trust injury is present i.e. whether the plaintiff has standing, the lower federal courts have elaborated on *Brunswick,* and created a "factual matrix" in which to judge a plaintiff's claim. *Cromar Co. v. Nuclear Materials & Equipment Corp.,* 543 F.2d 501, 506 (3rd Cir.1976). The factors to be examined in the factual matrix are (1) the nature of the industry involved; (2) the relationship of the plaintiff to the alleged violator; and (3) the alleged effect of the anti-trust violation on the plaintiff. Mindful that anti-trust activity affects all of society, the matrix then focuses on the plaintiff, asking whether *this plaintiff* is the one whose protection is the fundamental purpose of the anti-trust laws. *Id.*

■ In their Amended Complaint, plaintiffs aver that the individuals or entities providing helium sampling services are small; that another Colorado and a Washington state company work only on specific requests for the service; and that the sole other large competitor is a Canadian corporation. The service, apparently, is a limited one, used by some mineral exploration companies seeking new geothermal locations. Plaintiffs' specific product line is marketed as "Air Alive." Plaintiff's complaint is devoid of allegations of the nature of the industry with regard to the alleged anticompetitive effect of the sale, the effect on pricing and the predatory nature of the competition.

The remaining factors merge into the fundamental question whether *this* is the proper plaintiff whose protection is the fundamental purpose of the anti-trust laws. After the sale of Western's assets and most of its liabilities, Western applied for and received a certificate of dissolution in November of 1982. By this act, Western evidenced its decision not to continue in the helium sampling business and not to compete further in the market. Western's contention that Colo.Rev.Stat. § 7–8–122 confers standing on dissolved corporations to sue and be sued within two years of the dissolution cannot invest Western with federal standing under the Sherman Act.

In a similar case, *Chrysler Corp. v. Fedders Corp.,* 643 F.2d 1229 (6th Cir.1981), Chrysler argued that it had been eliminated from competition by the destruction of its Airtemp Division and affiliated subsidiaries. In fact, Chrysler had entered into an agreement with Fedders Corporation to sell virtually all of the assets of its Airtemps Division. After execution of the contract, Chrysler became dissatisfied with the agreement and filed suit under § 4 of the Clayton Act. The Sixth Circuit held that by its agreement to sell Airtemps, Chrysler voluntarily withdrew from competition in the market. "It did not contemplate continuing to compete in that market and in fact covenanted not to do so ..." *Id.* at 1235.

Similarly, in *A.D.M. Corp. v. Sigma Instruments, Inc.,* 628 F.2d 753 (1st Cir.1980) and *Synco, Inc. v. Penn Central Corp.,*

551 F.Supp. 949 (E.D.Pa.1982), the courts examined the purported anti-competitive effect of the sale of the assets of a business. Two distinctions were drawn. The *A.D.M.* court noted:

> If the sale of plaintiff's assets had an effect on competition, it would have occured whether or not [plaintiff] was harmed. There is thus lacking the essential connection between injury and the aims of the anti-trust laws necessary to give [plaintiff] standing.

*Id.* at 754. The *Synco* court emphasized the necessity of distinguishing between the alleged business torts which may occur in the sale of the assets of a company and the purported anti-competitive effect of the transaction.

To infuse the "shell" of Western with anti-trust standing in the light both of its corporate demise and later falling out with its successor would render the standing requirement of § 4 a nullity. That Western was a named plaintiff in the state action confers no anti-trust injury cognizable under the Sherman Act.

When the focus shifts to co-plaintiff McCasland, the result is no different. In response to interrogatories, McCasland stated that he considered himself to be an employee with no special bonus or stock provisions written into his position. [See defendant's Exhibit B]. Although the courts are uniform in denying Clayton standing to former shareholders or shareholders of a corporation, *McDonald v. Johnson & Johnson*, 722 F.2d 1370 (8th Cir.1983) some disagreement whether former employees have standing to maintain a federal anti-trust action. Whether the employment interest constitutes "business or property" generally turns on the relationship between the employee's claim and the nature of the alleged anti-trust violation. *See* Areeda & Turner, *Anti-Trust Law,* 334, 338; *See also, Perry v. Hartz Mountain Corp.,* 537 F.Supp. 1387 (S.D.Ind. 1982); *Harsh v. CPC International,* 395 F.Supp. 578, 580 (N.D.Tex.1975). McCas-

land's exposure to liability in the state action related to his alleged breach of the covenant not to compete. There are no allegations that plaintiff was forced to sell because of threats or other predatory conduct. "The transmutation of state law torts into federal anti-trust violations would have to be based upon a finding that the injuries for which compensation is sought have an unreasonable effect on *competition,* as well as on a particular competitor." *A.D.M. Corp.* at 754. (court's emphasis) (citation omitted).[5]

The facts of the instant complaint in its present posture compel the conclusion that the protection fundamental to the purposes of the anti-trust laws is not available to the remaining plaintiffs. Accordingly, I conclude that plaintiffs lack standing to assert their first through sixth claims for relief. Without federal jurisdiction, the surviving pendent claims for tortious interference with contract and tortious interference with a prospective business advantage, being questions of state law, are more properly addressed in the state court.

Upon the foregoing, it is

ORDERED that defendants' motion for summary judgment, filed December 11, 1984, is granted on plaintiffs' first through sixth claims for relief, and it is

FURTHER ORDERED that plaintiffs' seventh and eighth claims for relief are dismissed for lack of jurisdiction.

---

**5.** It is unnecessary to reach defendant's contention that the state action is a protected use of the judicial process as enunciated by *Hydro-Tech (supra.).*